BOARD OF DIRECTORS ST. FRANCIS LEVEE DIST.

*v.* WILLIFORD.

Opinion delivered October 25, 1915.

1.   ST. FRANCIS LEVEE DISTRICT—AUTHORITY OF BOARD—CERTIFICATES OF INDEBTEDNESS—EXTRAORDINARY EMERGENCY.—Sec. 5, Act No. 237, p. 721, Acts 1909, provided that the St. Francis Levee Board might issue certain certificates of indebtedness, in cases of extraordinary emergency.  *Held,* it was within the discretion of the board, acting in good faith to determine what constituted an extraordinary emergency, but that the issuance of such certificates was limited to $21,000.00.

2. Statutes—construction—determination of legislative intent.— When the language used by the Legislature is ambiguous, to determine its intention, the court should .look, not only to the act under consideration, but may it consider other acts in *pari materia.*

Appeal from Crittenden Chancery Court; *C. D. Frierson,* Chancellor; affirmed in part and reversed in part.

### STATEMENT BY THE COURT.

This suit was instituted by the plaintiff, a taxpayer, owning lands in the St. Francis Levee District, to restrain the board of directors from issuing certificates of indebtedness amounting to $95,670.00. The board of directors, it appears from the pleadings, passed resolutions providing for the issuance of certificates of indebtedness varying in amounts from $16,000 to $21,120 to repair and construct the levee of the district at five different places therein. The board declared that the work of repairing and constructing the levee at each of the places named was an extraordinary emergency and directed the officers to contract for the work and to sell interest-bearing certificates of indebtedness to pay for the same. These five separate resolutions were passed by the board on September 9, 1915. It appears that during the months of April and May, 1912 and 1913, the board of directors of the St. Francis Levee Disrtict had already declared extraordinary emergencies and had caused to be issued interest-bearing certificates of indebtedness amounting to the sum of $21,000.

The chancellor entered a decree perpetually enjoining the board of directors from issuing and selling interest-bearing certificates of indebtedness in an amount exceeding $21,000 in any one or all of said emergencies mentioned in said resolutions; but entered a decree authorizing them to issue interest-bearing certificates of indebtedness in the sum of $21,000 to cover one or all of the emergencies mentioned in the resolutions. Both parties have appealed. The facts as set forth in the pleadings were undisputed.

Section 5 of Act No. 237 of the Acts of 1909, page 721, provides: "It shall be unlawful for the said

Board of Directors, St. Francis Levee District, or any officer, member or agent thereof, to pledge or deposit any bond or coupon issued under the provisions of this Act as security of the payment of any borrowed money or any debt or obligation of said board or of any person, firm or corporation whatever, or to appropriate or use any money arising from the sale of any such bond or bonds to any use or purpose whatever other than as herein expressly directed, or to sell or negotiate any such bond or bonds for and at an amount or price less than par, or to issue any interest-bearing certificate of indebtedness of said board or district; *provided,* that interest-bearing certificates of indebtedness of said board or district payable to bearer and negotiable may be issued in cases of extraordinary emergency for levee work not to exceed twenty-one thousand ($21,000) dollars upon a two-thirds vote of the entire membership of said board. And the St. Francis Levee Board shall not enter into any contract for levee work of any kind unless the board has or will have from the revenue thereby of that year sufficient money in its treasury to pay for such work. Any member, officer or agent of said Board of Directors, St. Francis Levee District, who shall violate any of the provisions of this section shall be deemed guilty of a felony, and upon conviction thereof shall be imprisoned in the penitentiary for not less than one nor more than five years.''

*L. C. Going* and *John J. Lindsey,* for the Levee Board.

1. Sec. 5 of the Act is void for uncertainty. Here was an extraordinary emergency within the Act. 34 Ark. 224; 59 N. E. 489; 57 Pac. 965; 63 S. W. 785; 12 So. 739; 56 N. W. 27; 90 *Id.* 1055; 55 S. W. 627; 86 N. E. 522; 49 Am. Rep. 652.

2. It is unconstitutional in that it is violative of vested rights. 94 Ark. 27; 70 *Id.* 300; 30 *Id.* 677; 31 *Id.* 494; 30 *Id.* 128; 5 *Id.* 217; 17 *Id.* 489; 68 *Id.* 333; 64 *Id.* 502; 95 S. W. 140; 96 U. S. (L. Ed.) 659.

3. The demurrer admits the existence of the emergency at all of the five places mentioned. The attempted

limitation in Section 5 is uncertain and indefinite. 25 Cyc. 196.

*B. J. Semmes,* for Williford.

1. The board had already exhausted its authority, and no further issue could be made. Acts 1909, § 5, 79 Ark. 229; 28 Cyc. 310; 27 Ark. 419. No such emergency as contemplated by the Act is shown.

Wood, J. (after stating the facts). These appeals involve the construction of the section set out above. The plaintiff, on his appeal, contends that the board of directors, under the above section, had authority to issue interest-bearing certificates of indebtedness in extraordinary emergencies in an amount not exceeding $21,000, and that when such certificates were issued in that amount during the years 1912 and 1913 the power of the board was exhausted, and that therefore so much of the decree of the chancellor as authorized the issuing of interest-bearing certificates of indebtedness in the amount of $21,000, pursuant to the resolutions of the 9th of September, 1915, was erroneous.

The defendants on their appeal, contend that the chancellor erred in not holding that the board had authority to issue interest-bearing certificates of indebtedness in an amount not exceeding $21,000 to do the work contemplated in each case where the board declared that an emergency had arisen.

The act does not define what an extraordinary emergency is. That, necessarily, is left to the discretion of the board. So long as the board does not act arbitrarily, capriciously or fraudulently, their conduct in declaring extraordinary emergencies cannot be challenged.

When the whole act is considered, it is manifest that the Legislature did not intend by the section under review to grant the Board of Directors of the St. Francis Levee District any such unlimited power as that contended for by the defendants. On the contrary, the purpose of the proviso, as we construe the act, was only to allow the board to declare extraordinary emergencies, when any should arise, and to issue interest-bearing certificates of

indebtedness to pay for the work done in an endeavor to meet such emergencies, to the amount of $21,000 and no more.

To determine the intention of the Legislature, where the language is ambiguous, the court should look not only to the act under consideration, but may consider other acts in *pari materia*. The Legislature at the same session on the same day (Act 236, Acts 1909), had provided for a bond issue of $750,000 for the purpose of redeeming a previous bond issue in that sum which had been issued "for the purpose of completing the line of levee begun by the Board of Directors of the St. Francis Levee District," and for "building, repairing, rebuilding, raising and maintaining levees within the district." See Act 55 Acts of 1899. The first, second, third and fourth sections and the first part of the fifth section of the act now under consideration show that the Legislature had authorized another bond issue of $325,000, the proceeds of which were "for the purpose of paying for and carrying out the provisions of all contracts for work and labor" in the repairing, constructing and maintaining of the levee in said district made prior to March 1, 1909.

It is manifest from these acts, when construed together, that the Legislature was treating the levee or levees provided for in the act creating the St. Francis Levee District, as a completed project, and the proceeds of these bond issues were intended to pay for all the work that had been done in building, repairing, constructing and maintaining such levee as a completed whole up to March 1, 1909. The Legislature prohibited the St. Francis Levee Board from expending the money raised by these bond issues for any other purpose than that declared in these acts. Then, after authorizing the bond issues in these large amounts and the expenditure of the money raised by such issues in building, repairing, constructing and maintaining the levee of the district, and limiting the amount of money thus raised for the purposes therein named, the Legislature, in the section under review, undertook to provide for cases of extraordinary

emergency that might arise thereafter, and limited the entire amount to be expended in these emergencies to the sum of $21,000. It is the same, in effect, as if the Legislature had said "For extraordinary emergencies the board may issue interest-bearing certificates of indebtedness not to exceed the sum of $21,000." The language of the whole act shows that the Legislature had in mind to place a definite limit as to the amount that the board might expend in extraordinary emergencies. The Legislature doubtless concluded that after the expenditure of the large sums of money that had been previously authorized for levee purposes and the completion of the work contemplated by the money raised by these bond issues, that it would not be necessary in the immediate future to expend any very large sums, and that the expenditure of any further sums should not be allowed except in cases of extraordinary emergency, and then only to the extent of $21,000, for all emergencies that might arise.

The board derived its power in the matter of issuing bonds or interest-bearing certificates of indebtedness from the the Legislature, and, although the board of directors as an agent of the State, was charged by the Legislature with the performance of certain duties, to-wit, the building, repairing, maintaining, etc., of the levee within the district, yet this board, under the act, has no power to issue bonds or interest-bearing certificates of indebtedness and to raise and expend the money derived therefrom except as therein expressly provided. While the language of the act, to-wit, "in cases of extraordinary emergency," indicates that there may be more than one case of extraordinary emergency, yet this language does not denote that in each case the sum of $21,000 may be expended. On the contrary, the plain language indicates that the sum of $21,000 is the maximum amount for which interest-bearing certificates of indebtedness can be issued.

The severe penalty which the Legislature imposed for a violation of the provisions of section five shows an

intention that these provisions, concerning the issuance of interest-bearing certificates of indebtedness, should be restrictions upon the power of the board of directors to expend money in cases of extraordinary emergency, and that they should not go beyond the amount designated in the act.

It follows that so much of the decree as perpetually enjoined the defendants from issuing certificates of indebtedness in an amount exceeding the sum of $21,000 is correct, and it is affirmed. That part of the decree, however, which permits the issuance of interest-bearing certificates of indebtedness not exceeding $21,000 in pursuance of the resolutions of the board passed September 9, 1915, is erroneous, because the pleadings show that the board had, on a former occasion, since the passage of the present act, issued interest-bearing certificates of indebtedness in an amount equal to that sum. That part of the decree, therefore, permitting the further issuance of interest-bearing certificates of indebtedness will be reversed and remanded with directions to perpetually enjoin and restrain defendants from the issuance of further interest-bearing certificates of indebtedness.

HART and SMITH, JJ., concur in part and dissent in part.

SMITH, J. We agree with the chancellor that the Act contemplated that more than one emergency might arise, but that not more than one could arise or exist at any given time.

However, we do not agree that the enlargement work covered by the resolutions of the board was such an emergency as was contemplated by the Legislature. The purpose of this enlargement work was to bring the levee more nearly to the final standard adopted as being necessary for the protection of the lands of the district. This enlargement work is not an extraordinary emergency. It is necessary work, of course, but work the necessity for which has existed since the building of the levee was begun; and such necessity will continue until the final standard of perfection and safety has been

reached. But we think this necessity does not constitute an extraordinary emergency within the meaning of the Act, and for this reason we concur in the conclusion announced by the court.

Mr. Justice HART concurs.