TOWELL *v.* ETTER.

Opinion delivered December 1, 1900.

1. ACCRETION—TAX SALE.—A purchase at commissioner's sale for delinquent levee taxes of a tract of land described as the south-west quarter of a certain section, containing 151 acres, will carry title to 35 acres of land which had previously been added to such land by accretion. (Page 38.)

2. TAX SALE—MISTAKE AS TO ACREAGE.—Where a tract of land is otherwise properly described in a levee tax assessment, a mistake as to the number of acres will not invalidate a commissioner's sale based upon such assessment. (Page 39.)

3. FORCIBLE ENTRY AND DETAINER—INSTRUCTION.—An instruction in an action of forcible entry and detainer that, "if the plaintiff had abandoned the land, and the defendant entered and took possession, then the plaintiff cannot recover in this suit, and you will find for the defendant," and that "an abandonment, for the purpose of this suit, would mean such acts as a man usually does when a field or portion of land becomes unprofitable to cultivate, and he removes the fence, or permits it to go to decay or to be thrown down and to waste," is incorrect where it ignores the question of actual possession of the land by the plaintiff at the time of defendant's entry, and also ignores the question of the use of actual force in making the entry. (Page 40.)

4. SAME.—One having title and right to possession of land may get possession peaceably, and defend his possession by force, if necessary; and, if he do so, he will not be guilty of forcible entry and detainer. (Page 40.)

Appeal from Crittenden Circuit Court.

FELIX G. TAYLOR, Judge.

STATEMENT BY THE COURT.

The appellee, Etter, brought this action of forcible entry and detainer against appellant Towell, who claimed to be a tenant of appellant Thompson, to recover possession of 35 acres of land, said to be accretion to southwest quarter of section 13, township 9 south, range 8 east, and claimed damages in the sum of $50. Thompson, being the real party in interest, was made defendant.

The evidence shows that Etter bought the land in controversy March 13, 1889, and had a house upon it, and had, through his tenants, occupied it since the spring of 1889 up to about the time of the entry by Towell, claiming the exclusive ownership thereof. Thompson, the landlord of Towell, claimed title and possession under a deed made to him on February 16, 1897, by J. L. Holloway, as commissioner in chancery of the Crittenden county circuit court, which deed shows that at a sale of lands for levee taxes of the St. Francis Levee District Thompson had bought the southwest quarter of section 13, township 9 north, range 8 east, containing 151 acres. It seems from the evidence that Etter had been keeping a tenant in the house on the premises nearly all the time. Sometimes there would be an interval between the going out of one tenant and the coming in of another, when the house would be unoccupied for a week or two. The house was not locked, and no one was occupying it when Towell entered. Thompson came to the house first, and put some chains in it, and locked or nailed it up. At the time the gates were closed, the fences unbroken, and the house shut up. This was about January 1, 1897. Towell, it appears, moved in about this time. Towell cultivated 10 or 12 acres of the land in 1897, and made 6 bales of cotton and about 100 bushels of corn. Thompson and Towell took possession without the consent of Etter or his son, who seems to have been in charge of the land at the time.

*William M. Randolph,* of Memphis, Tenn., for appellants.

Forcible entry and detainer and unlawful detainer cannot be joined in the same suit. 13 Ark. 448; 27 Ark. 46. The action depends on the statute. Sand. & H. Dig. § 3443. Force is the gist of the action. 38 Ark. 258; 41 Ark. 535; 40 Ark. 92; 10 Ark. 43. The defendant must have entered without consent, and the original entry and subsequent holding was with force. 18 Ark. 284; 18 Ark. 304; 27 Ark. 460; 41 Ark. 539. The whole case, both the law and the facts, should have been submitted to the jury. 27 Ark. 334; 20 Ark. 493; 25 Ark. 405-417; Cooley, Const. Lim. (6th Ed.) 392-397 and 564-567; Constitution of Ark. art. 7, § 23. The court should have told the jury what was possession and what was taking possession forcibly and without force, and left it to the jury to find the facts. 8 Ark. 83; 30 Ark. 380; 14 Ark. 530; 31 Ark. 699; 52 Ark. 45. The court should have given the first instruction asked by the defendants. 40 Ark.

192; 62 Ark. 588; 55 Ark. 360. The second and third instructions asked by the defendants should have been given. 7 Wall. 272; 168 U. S. 349. The land was an accretion to section 13, and became a part of it, and title was in the owner of section 13. 25 Ark. 120; 53 Ark. 316. The court should have told the jury the effect of the deeds and decrees referred to. 20 Ark. 583; 23 Ark. 205; 1 Gr. Evidence, §§ 49 and 277 and notes. The act creating the St. Francis Levee District provided for the levy and collection of taxes. Acts 1893, c. 19, p. 24; c. 75, p. 119; c. 100, p. 172; Acts 1895, c. 71, p. 88. These acts provided for a suit *in rem,* and a sale of the land proceeded against passed title to lands sold to purchaser. Acts 1893, c. 19, §§ 11-12-13, p. 31-2; Acts 1875, c. 71, p. 88, §§ 1 and 2; 51 S. W. Rep. 830. It was the duty of the court to decide that title of the land was in Thompson. 41 Ark. 535; 55 Ark. 360; 62 Ark. 588. The entry now allowed by law is a peaceable one. 4 Black. Com. p. 148; 41 Ill. 285; 132 Mass. 200. The party out of possession must use legal means to obtain possession. 119 U. S. 611.

*C. W. Heiskell,* for appellee.

Thompson entered the house without the knowledge and consent of plaintiff. 41 Ark. 535. This was a forcible entry on the part of Thompson. Sand. &. H. Dig. 3443. Accretion could never have been made. 25 Ark. 120. Thompson's entry was forcible. 119 U. S. 611.

HUGHES, J., (after stating the facts.) Section 3443 of Sandels & Hill's Digest provides that "if any person shall enter into or upon any lands, tenements, or other possessions, and detain or hold the same without right or claim of title, * * * in such cases every person so offending shall be deemed guilty of a forcible entry and detainer within the meaning of this act." Were the defendants guilty under this statute and the proof in this case? The defendant Thompson had a deed as above set out for the southwest quarter of section 13, township 9 north, range 8 east, 151 acres only, and claimed that 35 acres in controversy were an accretion to the southwest quarter of section 13, and that when he bought at tax sale the said southwest quarter of 13, described in his deed as containing 151 acres, the said 35 acres as an accretion passed to him under his said deed to said southwest quarter of section 13. But this is not the law. At the time of his purchase of the southwest quarter of section 13, this accretion of 35 acres

had been formed, and was above the surface of the water, and susceptible of private ownership, and, according to authorities, the title to the same did not vest in or pass to him under his purchase of the southwest quarter of 13, which, as shown by the evidence, was after said accretion of 35 acres had merged from beneath the water, and had had a house built upon it, and part of it had been in cultivation. "As between vendor and vendee, the right to alluvion depends upon the condition of the land at the time of the transfer of the legal title. It includes future additions, but cannot be carried back by relation to the date of a title bond, under which the conveyance was made." Gould, Waters (3d Ed.) § 186. That is to the effect that a vendee is entitled to accretions to land made after his purchase, but not to those made before, unless the accretions are expressly conveyed. *Jones* v. *Johnson,* 18 How. (U. S.), 150.

In *Barre* v. *City of New Orleans,* 22 La. An. 612, the court held: "That to riparian proprietors belong the accretions which may, in progress of time, be formed by the sedimentary deposits of the stream along its shores, there is no question. In the sale of the riparian land the test as to whether the alluvion or batture, if any attached to it is conveyed with the land or not, has been definitely settled by repeated decisions of this court. If, at the time of the sale of riparian land, the alluvion attached has attained a sufficient elevation above the waters to be susceptible of private ownership, the alluvion does not pass with the land, unless so expressed."

So it appears that Thompson had no "right or claim of title to the alluvion of 35 acres accretion to the southwest quarter of section 13 by virtue of his purchase and the conveyance to him of said southwest quarter of section 13; for before said purchase and conveyance said accretion "had attained a sufficient elevation above the waters to be susceptible of private ownership," and had been sold and conveyed, and been partly in cultivation. The expression, "claim of title," should be construed to mean a claim having some appearance of legality, not a mere bare claim without the appearance or pretense of anything to base it upon.

It follows, therefore, that, under the statute above quoted, the appellant Thompson was guilty of forcible entry and detainer, and that the judgment of the circuit court was correct. Judgment affirmed.

Opinion delivered May 18, 1901.

HUGHES, J. The facts in this case, as stated when the opinion was delivered which we are asked to reconsider, are as follows:

"The appellee, Etter, brought this suit of forcible entry and detainer against appellant Towell, to recover possession of 35 acres of land, said to be accretion to southwest quarter of section 13, township 9 south, range 8 east, and claimed damages in the sum of $50. Thompson, being the real party in interest, was made defendant. The evidence shows that Etter bought the land in controversy March 13, 1889, and had a house upon it, and had, through his tenants, occupied it since the spring of 1889, up to about the time of the entry by Towell, claiming the exclusive ownership thereof. Thompson, the landlord of Towell, claimed title and possession under a deed made to him on February 16, 1897, by J. L. Holloway, as commissioner in chancery of the Crittenden county circuit court, which deed shows that at a sale of lands for levee taxes of the St. Francis Levee District Thompson had bought the southwest quarter of section 13, township 9 north, range 8 east, containing 151 acres. It seems from the evidence that Etter had been keeping a tenant in the house on the premises nearly all the time. Sometimes there would be an interval between the going out of one tenant and the coming in of another, when the house would be unoccupied for a week or two. The house was not locked, and no one was occupying it when Towell entered. Thompson came to the house first, and put some chains in it, and locked or nailed it up. At the time the gates were closed, the fences unbroken, and the house shut up. This was about January 1, 1897. Towell, it appears, moved in about this time. * * * Thompson and Towell took possession without the consent of Etter or his son, who seems to have been in charge of the land at the time."

We said in the opinion in this case, in substance, that no right to the accretion of 35 acres to southwest quarter section 13 passed to Thompson by virtue of his deed to said southwest quarter of section 13, because the accretion had formed before his purchase, and was above the surface of the water and susceptible of private ownership, and that, "as between vendor and vendee, the right to alluvion depends on the condition of the land at the time of the transfer of the legal title;" that a vendee is entitled to ac-

cretions to land made after his purchase, but not to those made before, unless the accretions are expressly conveyed. To support this ruling, we relied mostly upon the case of *Barre* v. *City of New Orleans,* 22 La. An. 613, which is directly in point in support of the opinion. We said, therefore, that Thompson's deed was no color of title to the accretion, and that, under § 3443, Sandels & Hill's Digest, he was guilty of forcible entry and detainer. Part of that section reads as follows: "If any person shall enter into or upon any lands, tenements or other possessions, and detain or hold the same without right or claim of title, * * * in such cases every person so offending shall be deemed guilty of a forcible entry and detainer within the meaning of this act."

We find, upon further investigation, that in the case of the *East Omaha Land Co.* v. *Jeffries,* 40 Fed. Rep. 386, Judge Brewer, delivering the opinion of the court, first held substantially the doctrine laid down in the opinion delivered in the case at bar, but upon a motion for reconsideration he held differently, that is to say, that a conveyance by a vendor of his land, to which there is an accretion already formed at the time of the conveyance, carries the accretion thereto, unless reserved in the deed. He holds that where a water line is the boundary of a named lot, that line remains the boundary, no matter how it shifts, and a deed describing the lot by number or name conveys the land up to that shifting line, exactly as it does up to the fixed side lines. Upon appeal to the supreme court of the United States, this decision of the motion for reconsideration was affirmed, the court holding to the same doctrine laid down by Judge Brewer. *Jefferis* v. *East Omaha Land Co.,* 134 U. S. 178.

There seems to be no doubt that the 35 acres in controversy in this case were an accretion to southwest quarter of said section 13 bought for taxes by Thompson as aforesaid. While the land here is not described as a lot is in the case just quoted from, by name, but is described according to the section lines, yet we apprehend the same doctrine applies in this case as in that.

The fact that the deed to Thompson is for southwest quarter 13 , 151 acres, does not limit his purchase to that number of acres. Where land is otherwise properly described, and so designated as to lead the owner to a knowledge that it is his land, a mistake in the number of acres is immaterial. *Putnam* v. *Tyler,* 117 Pa. St. 570. This would not affect the validity of an assessment or sale upon such an assessment. While there seems to be a conflict in the

decisions upon the question whether accretion already formed passes to the vendee by the conveyance of the vendor of the land to which it had formed, we esteem it proper and right to approve the doctrine of *East Omaha Land Co.* v. *Jefferis,* as announced by the supreme court of the United States in 134 U. S. *supra,* and we adhere to that doctrine; and as to this the motion for reconsideration is sustained. While the result of the application of that doctrine in this case is not agreeable to the writer, courts cannot make decisions to relieve hardships. As it has been said, hard cases sometimes make shipwreck of the law.

There remains the question whether there was a forcible entry, as actual force is said to be the gist of the action of forcible entry and detainer. *Hall* v. *Trucks,* 38 Ark. 257. A peaceful entry, though unlawful, is not sufficient to sustain the action. *Anderson* v. *Mills,* 40 Ark. 192. According to the ruling herein made, Thompson had title to the accretion of 35 acres to southwest quarter of section 13 by virtue of his purchase of southwest quarter of 13 at tax sale. The evidence does not seem to show that he used force in making his entry, but this was a question of fact for the jury, under proper instructions by the court as to the law. The court in its instructions seems to have stated the law correctly, except in the latter clause of the third instruction. The instruction entire is as follows: "(3.) If the plaintiff had abandoned the land, and the defendant entered and took possession, then the plaintiff cannot recover in this suit, and you will find for the defendant. An abandonment, for the purpose of this suit, would mean such acts as a man usually does when a field or portion of land becomes unprofitable to cultivate, and he removes the fence, or permits it to go to decay, or to be thrown down and to waste." This is evidently incorrect. It ignores the question of actual possession of the land by the plaintiff at the time of the appellant's entry, and also ignores the question of the use of actual force in making the entry. In *Winn* v. *State,* 55 Ark., 360, we held that "where a landlord, entitled to re-enter for condition broken, took possession peaceably in the absence of the tenants from the premises, he has the right to protect his possession by force, if necessary, as well against former tenants as any one else proposing to take possession without right." This is to the effect that one having title and right to possession may get possession peaceably and defend his possession by force, if necessary, and if he do so he will not be guilty of forcible entry and detainer.

For the error indicated, the judgment is reversed, and the cause is remanded for a new trial.

BUNN, C. J., (dissenting). It will not be controverted that up to the time of the tax sale the appellee, Etter, was the owner of the accretions involved in this suit, by reason of his being the owner of the fractional quarter section against which they were formed; nor that, according to the original government surveys, the patent issued to the enterer by the government, the assessment list, the delinquent list, the notice of tax sale, and the deed made in pursuance of the sale, the description given was uniformly the fractional southwest quarter of section 13, containing 151 acres, and nothing more, except the number of the township and range.

Nor is it necessary, for the purposes of the decision of this case, to controvert the doctrine that a deed must be construed most strongly against the grantor, and to conclude from that that a grantor has conveyed by implication more than is actually described in the deed, for the argument is supported in this case only by one or more decisions, whose application may well be called in question, as the descriptive words in the deeds therein referred to give not the least intimation of the shape or quantity of the lands involved, but they are only designated by arbitrary names, as, for instance, "Lot No. 4," "Lot No. 34," and so forth, which may contain one acre or a hundred acres, and which may be square, a triangle or a circle.

The authorities are by no means agreed as to the rule, even in case of voluntary conveyences. In Louisiana, for instance, where, for local reasons, the subject has been the more closely studied, and from time immemorial, of any other locality of this country, it is held that the quantity of land conveyed is exactly that named in the deed, regardless of the changes that may have occurred in the way of accretions. *Barre* v. *City of New Orleans*, 22 La. An. 612. But, whatever may be the rule as to voluntary conveyances, I think the rule applicable to tax sales can be but one way. Section 6499, Sand. & H. Dig., reads thus: "Every assessor on or before the second Monday in September, in the year eighteen hundred and eighty seven, and every second year thereafter, shall make and deliver to the clerk of the county court a report in tabular form contained in a book to be furnished him by such clerk of the county court, the amount and value of real property subject to be listed for taxation in the county, and the amount and description of all

lands belonging to the United States and to the state of Arkansas; also all other lots, parcels or tracts of lands exempt from taxation, which return shall contain, etc." And then follows the first and second subdivisions of the section, the latter concluding with the tabular form referred to, in which appear the names of owners, the parts of sections, and sections, and townships, and ranges, and valuation, each in its appropriate column. It conclusively appears from this statute that one of the essential things to be stated in this assessment list is the amount or quantity of land in each tract, and this is always expressed in acres under our system. In construing a statute substantially the same as ours, the supreme court of Ohio, in *Perkins* v. *Dibble*, 10 Ohio, 433, 36 Am. Dec. 97, held that a tax deed was void where the number of acres was not named in the assessment list. It is evident that, if the deed was void where the quantity of land was not named in the assessment list, it would be void as to all land except the quantity named in such list, for the naming of the quantity is an essential thing, as fixing the extent of the forfeiture and conveyance thereunder.

Again, under our revenue system, as a circumstance g... .ng still further to show the necessity of naming in the list, and all papers founded thereon, the number of acres assessed, sold and conveyed, the collector is required to offer each tract on the list delinquent for the non-payment of the taxes, and to strike off the same to the bidder who will pay the taxes, penalty and costs assessed against the same for the least quantity of the land, and this least quantity is to be laid off in the northeast corner of the tract as so many acres, for that is the way the bids must run. It may be safely said that no valid tax deed exists unless the number of acres conveyed is named therein. If the quantity is thus so essential, the parties to a deed must necessarily be bound by the quantity named.

In making his assessments, the assessor is required to ascertain the quantity of any tract of land, as well as other facts connected with the description and location of the land, and the statute furnishes him with ample facilities to accomplish this purpose. It is not his function to determine the effect and result of accretions. He acts upon existing facts, and not upon mere conclusions of law. The facts are that the fractional quarter section contained when surveyed 151 acres. An addition made to it by accretion should be valued; and, if it should be valued, it follows that it

should be measured, or it cannot be sold for the non-payment of taxes, for a tax sale carries no more than what is assessed.

I think, therefore, that the motion for a rehearing should be overruled, and the decree of affirmance be permitted to stand.