THOMPSON *v*. ROAD IMPROVEMENT DISTRICT NO. 1 OF BOONE COUNTY.

Opinion delivered June 9, 1919.

1.  STATUTES—CONSTRUCTION.—Statutes relating to the same subject are to be treated as having formed in the minds of the members of the Legislature parts of a connected whole, although considered by that body at different dates, and under distinct aspects of the common subject, and are to be read and construed as one statute and as governed by one spirit and policy.

2.  HIGHWAYS — LIMITATION ON TAXING POWER — COST OF CONSTRUCTION.—Acts 1919, No. 221, passed to cure defects in organization of a road improvement district organized under Acts 1915, p. 1400, in providing in section 3 that "the cost of construction of said road shall not exceed the sum of $3,000 per mile," and in prohibiting the district from charging against the lands in the district any amount in excess of $3,000 per mile for expense of construction, does not limit the liability of owners, but limits merely the cost of construction; section 28 of the above act limiting the indebtedness of the district, exclusive of interest, to 30 per cent. of total assessed value.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

*Rose, Hemingway, Cantrell & Loughborough*, for appellant.

This court has repeatedly held that in the construction of a statute effect should be given, if possible, to every clause. 2 Ark. 250; 11 *Id*. 44; 15 *Id*. 555; 17 *Id*.

651; 22 *Id.* 369; 28 *Id.* 203; 67 *Id.* 566; 76 *Id.* 309; 89 *Id.* 378; 99 *Id.* 149; 71 *Id.* 561; 109 *Id.* 60.

The court below erred in disregarding the language of section 3 of the Alexander act. There are two limitations in the act. One upon the cost of the work and the other upon the power of taxation. It seems to us that the limitation upon the taxing power is absolute and unqualified. The property owners cannot be required to pay a sum in excess of $3,000 per mile, and taxes to that extent will only pay the principal of the bonds and nothing for interest. This case is controlled by 55 Ark. 148.

*E. G. Mitchell, John I. Worthington* and *Troy Pace,* for appellee.

While it is true effect should be given if possible to every clause of the act, yet it is a fundamental rule that the act should be considered as a whole and read in the light of its other provisions. 115 Ark. 194-205. It is necessary therefore to read the entire section of the special act and construe the provisions of section 3. The commissioners are vested with all the powers, duties and responsibilities of the Alexander Law, Act 338, Acts 1915, and they are especially authorized to borrow money and to issue negotiable bonds for the necessary amount to complete the highway as provided by the Alexander law. Section 8 authorizes them to borrow money at a rate of interest not to exceed 6 per cent., and by the second paragraph of section 28, in making provision the limit of cost that cannot be exceeded, it is specifically provided that in determining whether any contract or liability is within said limit interest on bonds shall not be considered as part of the debt.

Even if specific reference was not made in this way by the special act to the general law, it still would be the duty of the court in construing the language of the special act to take into consideration the provisions of the general law, as all acts *in pari materia* are to be taken together as if but one law, but the intention of the Legislature is made much more plain by the specific author-

ity to borrow money and issue bonds as provided by the general law.

In interpreting the legislative will, it is also a rule that in interpreting the legislative will, it is by explaining its intentions at the time the law is enacted by signs that are most natural and probable, such as the words, the context, the subject-matter, the effects and consequences of the spirit and reason of the law, and the intention is to be taken or presumed according to that which is consonant to reason and good judgment. 48 Ark. 305; 32 *Id.* 462.

It is evident then that the provision as to cost of construction is intended as a limit upon the amount of liability to be incurred by the taxpayers and that alone, as by the exercise of the court's own good judgment and common experience it is readily seen that a macadamized surface highway as provided for could not possibly be constructed for $3,000 per mile. That amount will not pay for a graveled-surface dirt road.

The court also has the right to take judicial knowledge of the orders of the State Highway Commission, which allotted an additional sum of $30,000, making a total of $47,500 for the construction of the road improvement. This is further evidence of the fact that it is not contemplated that the entire road is to be limited to $3,000 per mile but that that limit is only upon the amount that shall be produced from the taxpayers. This is also evident by the concluding language of that section of the act, there shall not be charged or collected any amount in excess of $3,000 per mile, including the $17,500 State and Federal aid, as if the cost of construction was to be limited to $3,000 per mile, there would be no sense in making the further limitation of the same exact amount to be collected from the taxpayers. All these facts taken together make it plainly evident that the Legislature recognized that the road could not be constructed for $3,000 per mile; that it also knew, because of the importance of the road, the Highway Department would make further allotments to the road from time to time, and thus

insure its construction, and it was intended to make further provision for building the road with additional funds and to limit the cost only as to the amount to be raised by taxation. While read in its strictest sense, the language seems to indicate that it was not intended to expend more than $3,000 per mile, still a consideration of all the facts justifies the conclusion that the Legislature had in mind only the protection of the taxpayers within a certain limit and that their intention to permit further funds secured in other ways is made clear by the concluding language of that section.

As to the "interest" on the bonds, it is necessary to make a careful distinction between the "cost of the improvement" and "cost of construction." It is true, in 55 Ark. 148, it was held that interest was a part of the debt or *cost of the improvement,* but nowhere has it ever been held that interest on bonds would be included in cost of construction. The entire proviso with reference to cost is directed to the cost of actual construction and not to cost of improvement. "Construction" is adjusting and joining the materials or parts so as to form a permanent whole, while the *cost of improvement* would include every item of expense, including interest, of building the road, but the *cost of construction* is not nearly so comprehensive and is limited to the actual cost of the work of construction. See case in 95 Ark. 575 (579). See also 102 *Id.* 306. The finding of the chancellor is clearly correct and should be affirmed.

HART, J. This is an appeal from a decree of the chancery court holding that Act No. 221, approved March 10, 1919, was a limitation upon the actual cost of the construction of the road provided for in the act and not a limitation upon the liability of the property owners. The road district in question was organized under the general laws providing for the creation and establishment of road improvement districts for the purpose of constructing and maintaining highways in the State of Arkansas. Acts of 1915, p. 1400. Act No. 221, approved

March 10, 1919, was a special act relating to the same road, the object of which was to cure certain defects in the road as established under the general act. Therefore it will be seen that the two acts relate to a common subject and have a common purpose. The latter act supplements the prior one and was passed for the purpose of making certain changes in the plans and materials to be used in the construction of the road. It is a cardinal rule of construction that statutes relating to the same subject are to be treated as having formed in the minds of the members of Legislature parts of a connected whole although considered by that body at different dates and under distinct aspects of the common subject. Such statutes are to be read and construed as one statute and as governed by one spirit and policy. *Board of Directors of St. Francis Levee District* v. *Williford,* 120 Ark. 415, and *Smith, Treasurer* v. *Farmers Bank of Newport, Ark.,* 125 Ark. 459. Therefore, it becomes necessary to read the entire section of the special act in connection with the provision of the general act relating to the same subject in order to properly understand and construe it.

Section 3 of the special act is as follows:

"That said commissioners are hereby vested with all the powers, duties and responsibility mentioned and entrusted to them in the aforesaid Act No. 338 of the General Assembly of 1915, and it is made the duty of the commissioners to make and complete the improved highways contemplated by the formation of said improvement district; and that to that end said commissioners shall have the authority to borrow money and to issue negotiable bonds of the district for the requisite sum in manner and form as provided by said Act No. 338 of the General Assembly of 1915; provided, that said commissioners are hereby authorized and empowered to so change the plans for said proposed improved highways, so as to reduce the estimated cost thereof, by eliminating the base course called for in the plans and specifications along all parts of said highway where, owing to the nature of the ground and soil such base course can be

omitted without detriment or serious damage to said road, and by reducing the width of the macadamized surface from twelve feet to nine feet, and such other changes as in the judgment of the commissioners, by and with the approval of the engineer for the district, and the State Highway Engineer will tend to lessen the cost of construction and not materially decrease the usable value thereof; and further provided, that the cost of the construction of said road shall not exceed the sum of $3,000 per mile, including the sum of $17,500 already contributed and promised by way of Federal and State aid to the construction thereof, and in no event shall there be charged against or collected upon the real estate included in said district, for the purpose of such road construction, any amount in excess of said sum of $3,000 per mile, including the said amount of $17,500 to be received as Federal and State aid, for the expense of such construction.''

Section 28 of the general act provides that the board of commissioners shall be authorized to issue bonds for the purpose of securing money with which to carry out and perfect the work of the improvement. It also provides as follows:

''No board of commissioners shall have authority to make and enter into a contract or create a liability in the discharge of which sum of money shall be necessary that will, exclusive of interest, exceed thirty per cent. of the total assessed value of the real property located within the limits of the district. This limit of thirty per cent. is absolute and shall not be exceeded, regardless of the number of roads, the buildings, construction and maintenance and repair of same, or the length of the time required to perfect the work, but in determining whether any contract or liability is within the said limits interest on said indebtedness, or bonds herein authorized shall not be taken as a part of the debt.''

It will be observed that that part of the general act quoted above provides that no board of commissioners shall have authority to enter into a contract or create a

liability in the discharge of which a sum of money shall be necessary that will, exclusive of interest, exceed thirty per cent. of the total assessed value of the lands within the district. By using the words, "exclusive of interest," it is apparent that the framers of the act meant to empower the commissioners to make a contract that the original cost of the construction of the improvement should not exceed thirty per cent. of the assessed value of the land in the district. The avowed purpose of the special act was to lessen the cost of the improvement by providing for certain specified changes in the plans and materials used in making the road and by reducing the width of the macadamized surface. It, also, authorized the commissioners to make such other changes as, in their judgment, by and with the approval of the engineers, would tend to lessen the cost of construction. It is manifest that the words "cost of construction" as here used mean the original cost of building the road according to the altered plans and specifications provided for in the section. Continuing, the section further provides that the cost of construction of said road shall not exceed the sum of $3,000 per mile, including the sum of $17,500 contributed and promised by way of Federal and State aid to the construction thereof, and that in no event shall there be charged aginst the lands in the district for purpose of such road construction any amount in excess of said sum of $3,000 per mile, including the amount received as Federal and State aid, for the expense of such construction.

As we have already seen, the object and purpose of this statute as expressed by its terms was to change the plans and specifications of the road so as to lessen the cost of making it. According to the ordinary and natural meaning of the word "construction," a road is constructed when that is done which is required to put it in proper condition according to the plans and specifications, including overhead expenses, under which it is built and it is made ready for traffic. We think that the words "cost of the construction of said road" mean the

performance of all that is required in the section in regard to the actual building of the road, including grading, macadamizing and everything else necessary to make it a road. The words have nothing to do with interest on deferred payments for the cost of construction. They mean the original cost of making the road under the plans and specifications provided in the section in which they are used. This view is strengthened when we consider that the corresponding section of the general act, under which the improvement district was originally organized provides for a contract for the construction of the improvement for a certain specified cost and expressly states that it is exclusive of interest. This is in the application of the well established rule of construction laid down above.

It follows from the views we have expressed that the decision of the chancellor was correct and the decree will be affirmed.

WOOD, J., disqualified and not participating.