ANDERSON–TULLY CO. v.
MURPHREE et al.

No. 13120.

Circuit Court of Appeals, Eighth Circuit.

Jan. 16, 1946.

Lamar Williamson, of Monticello, Ark. (Williamson & Williamson, of Monticello, Ark., on the brief), for appellant.

George K. Cracraft, of Helena, Ark., for appellees.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from a judgment for plaintiffs, Dennis Murphree and others, in an action to quiet title to land and to cancel a deed executed by the State Land Commissioner of the State of Arkansas to defendant Anderson-Tully Company, in so far as it purports to convey the land in controversy. The area involved in this action is described as "All that part of Section 9, Township 17 South, Range 1 East, of the Fifth Principal Meridian, which lies on Big Lakeport Towhead Island as shown on the plat of Mr. St. George Richardson, dated December 20, 1943, filed with Claude A. Rankin as Commissioner of the State Lands for the State of Arkansas."

The parties are in substantial agreement as to the facts but for complete understanding it becomes necessary to epitomize the controlling facts in this opinion.

The original government survey was made in 1834 and at that time fractional Section 9 was surveyed as containing 598.81 acres, 41.19 acres of what would have been the Northwest corner of the section then being in the bed of the Mississippi River. The section was part of a peninsula known as "Belle Point", and was located on what was known as Belle Point Plantation. From 1834 until 1858 the river eroded Southeasterly, gnawing into the neck of the peninsula, and immediately prior to an avulsion which occurred in 1858 Section 9, or at least all of that portion involved herein, had been completely destroyed by erosion and most of it was in the bed of the Mississippi. The 1858 avulsion, which was known as the American Cut-Off, severed the narrow neck of the peninsula and that part of the peninsula which lay East of the new 1858 channel was thereafter called Belle Island. Since 1858 Belle Island has been bounded on the Southwest by the new channel of the river and on other sides by the old channel which is now known as Lake Lee.

Following the avulsion the river proceeded to straighten out above the location of the avulsion. It then moved west for some time and then back to the east again, which resulted in various erosions on one side and accretions on the other. Since 1879 the river has continued to erode Eastwardly. In the late 1890's there appeared in the Mississippi River an island known as Lake Port Towhead, now designated as Big Lakeport Towhead Island. A portion of this island is within the same geographical location as was the original Section 9, Township 17 South, Range 1 East.

The plaintiffs claim title to the land in controversy through record title and by adverse possession through payment of taxes for more than 15 years under Act No. 199 of 1929, Pope's Digest, § 8921. It is unnecessary for the purpose of this opinion to set forth the entire record of plaintiffs' chain of title. Original Section 9 was transferred by the United States by patents to private ownership at a time when the tract was land in place, before it disappeared by erosion prior to the American Cut-off of 1858. There is no record of any conveyance from the original patentees but Section 9 or fractional Section 9 appears in plaintiffs' chain of title in conveyances shown prior to 1880. Reference to Section 9 was discontinued after the deeds of 1880. The land in controversy is located west of what is now Belle Island and the present channel of the Mississippi River runs between Belle Island and Big Lakeport Towhead Island. No part of the land in controversy has ever been in the actual possession of any person, and has always been wild, unenclosed and unoccupied.

The stipulation discloses that no tax records are available prior to 1869 and that taxes were paid for 1869 and succeeding years as follows:

"For 1869 by Street & Carlton on 'All frl. 9, 618.81 acres.'

"For 1870 by Street & Carlton on 'All frl. 9, 618.81 acres.'

"For 1871 by J. T. Dowdall on 'All 9, 618.81 acres.'

"For the years 1872 to 1932, both inclusive, the taxes were paid on 'All 9, 510

acres,' by predecessors in plaintiffs' chain of title.

"For 1933 to 1935, both inclusive, taxes were paid on 'all on Island, Sec. 9, 510 acres.' By Plaintiffs' predecessors.

"For 1936 to 1943, both inclusive, plaintiffs and their predecessors in title paid taxes on 'All on Belle Island, Sec. 9, 510 acres.' "

The taxes from 1869 to 1943 inclusive were based on the following assessed valuations: For 1869, $6188; for 1870, $3400; 1871, $4760, 1872 and 1873, $3060; 1874 and 1875, $1250; 1876 to 1879, inclusive, $1550; 1880 to 1898, inclusive, $510.00; 1899 to 1916, $1020; 1917, $2550; 1918, $1275; 1919 to 1920, $1020; 1921 to 1924, inclusive, $150; 1925 to 1932, inclusive, $1000; 1933 to 1943, inclusive, $1020.

On June 22, 1943, the Arkansas Commissioner of State Lands, pursuant to proper statutory authority, commissioned Mr. St. George Richardson as state surveyor to survey Lakeport Towhead Island and to report all information which would enable the Commissioner to determine whether the area was in fact an island owned by the State and subject to sale under Act March 21, 1917, p. 1468, Pope's Digest, Sections 8739–8745. Section 8739 provides: "All islands formed or which may form in the navigable rivers or streams of this State, subsequent to the admission of the State of Arkansas into the Union, are hereby declared to be the property of the State and subject to sale and disposition in the manner and form hereinafter provided."

Pursuant to the commission, Richardson made a complete study and survey of the area and as a result thereof, and the oral testimony given before the State Land Commissioner, it was determined that the area was an island and was owned by the State. No evidence was presented or consideration given by the Commissioner concerning the applicability of the Act of April 26, 1901 (See Pope's Digest, Sec. 8709), which reads as follows:

"Whereas, Owners of land along navigable rivers often suffer by having such land washed away; and,

"Whereas, Under existing laws if such land re-forms as an island in a navigable stream though within the original boundary of the former owner, it belongs not to him but to the state; therefore,

"Be it enacted by the General Assembly of the State of Arkansas:

"Section 1. That all lands [land] which has formed or may hereafter form, in the navigable waters of this state and within the original boundaries of a former owner of land upon such stream, shall belong to and the title thereto shall vest in such former owner, his heirs or assigns, or in whoever may have lawfully succeeded to the right of such former owner therein.

"Section 2. Provided that nothing herein shall be construed to affect the rights or interests of third parties in any such land acquired before the passage of this act."

The defendant owns Sections 5 and 6 and the north half of Sections 7 and 8, Township 17 South, Range 1 East, located on the west side of the Mississippi River. The North part of Big Lakeport Towhead Island lies between this land and the present channel of the river. Defendant purchased this mainland area 33 years before the present suit was filed, and paid taxes on the land for each of the 33 years. Defendant originally considered land on Big Lakeport Towhead Island, including that in controversy herein, as an accretion to its tract on the mainland, but was finally advised by its attorney and surveyors that the area was owned by the State of Arkansas. Defendant thereupon purchased the land from the State, and on December 20, 1943, received from the State Land Commissioner an Island deed to Big Lakeport Towhead Island, and it is under this deed that defendant claims title to the land.

After the defendant's deed was recorded there was assessed for taxes for 1944, at defendant's request and without notice at the time to the plaintiffs, the following area, among others: "In Township 16 South, Range 1 East: * * * In Section 9, all of section 9 which is a part of Big Lakeport Towhead Island......226.35 acres." After this change was made at defendant's request no other part of Section 9 has appeared on the assessment or tax books.

█ The question for determination is whether under the facts and the Arkansas law, the District court reached a permissible conclusion in determining that the land in suit belongs to plaintiffs. See Russell v. Turner, 8 Cir., 148 F.2d 562, and cases cited.

█ The plaintiffs admit, as indeed they must, that they can recover only on the strength of their own title and that they will gain nothing by proving a defect in the

title asserted by defendant. Knight v. Rogers, 202 Ark. 590, 151 S.W.2d 669; Baxter v. McGee, 8 Cir., 82 F.2d 695.

The plaintiffs' record title to the area in controversy is defective. In the first place there is no record of a conveyance of this section by the original patentees. Furthermore, Section 9 appears in no entry in plaintiffs' title chain from 1880 until a so-called "quiet title" decree of July 1, 1940, and plaintiffs' deed of July 5, 1940. The deeds to plaintiffs' immediate predecessors in title conveyed only the tract known as Belle Island which was described as being bounded on the west by the Mississippi River. Under Arkansas law a riparian owner of land bounded by a navigable river takes only to the highwater mark and not to the middle of the river, the title to the river bed being in the State. St. Louis, I. M. & S. Ry. Co. v. Ramsey, 53 Ark. 314, 13 S.W. 931, 8 L.R.A. 559, 22 Am.St.Rep. 195; McGahhey v. McCollum, Adm'r, 207 Ark. 180, 179 S.W.2d 661. Plaintiffs could acquire only the rights of their grantors, Citizens Investment Co. v. Armer, 179 Ark. 376, 16 S.W.2d 15, and their grantors did not have record title to land located on Lakeport Towhead Island. The decree of 1940 which purported to quiet title to Section 9 in plaintiffs' predecessors and was entered in a suit to which defendant was not a party, can add no strength to plaintiffs' claim of record title. It appears that the suit was a private action between certain private parties and was not an action to quiet title brought under and in compliance with Sections 10958–10969, Pope's Digest.

We come now to a consideration of the effect of the Act of April 26, 1901. Under the law of Arkansas as it existed prior to 1901, all islands forming in the bed of a navigable river within the state belonged to the State, regardless of ownership of the land before it was submerged except in the event of an avulsion, in which case the owner retained title to the submerged land and any islands subsequently forming thereon. St. Louis I. M. & S. Ry. v. Ramsey, 53 Ark. 314, 13 S.W. 931, 8 L.R.A. 559, 22 Am.St.Rep. 195. Wallace v. Driver, 61 Ark. 429, 33 S.W. 641, 31 L.R.A. 317. Wallace v. Driver was decided in 1896, five years before enactment of the Act of April 26, 1901.

It is plaintiffs' contention that, in view of the Act of 1901, that portion of original Section 9 which reappeared as an island in the late 1890's became private property and that title vested in the former owners or their successors and that regardless of any defect in plaintiffs' record title to Section 9, they have obtained title to the land in dispute by payment of taxes thereon for more than 15 consecutive years without color of title, by virtue of Act No. 199 of 1929, Pope's Digest, Section 8921, which provides: "Payment of taxes on wild and unimproved land in this State by any person or his predecessor in title, for a period of fifteen consecutive years (at least one of said payments being made after the passage of this Act), shall create a presumption of law that such person, or his predecessor in title, held color of title to said land prior to the first payment of taxes made as aforesaid, and that all such payments were made under color of title."

The defendant contends that the Act of 1901 is not applicable because Big Lakeport Towhead Island did not begin to form within the geographical boundaries of original Section 9, that the Act was in effect repealed by the 1917 Act under which its deed was executed, and that the taxes paid by plaintiffs were intended to be paid on land formed by accretions to Belle Island and not on land formed on Big Lakeport Towhead Island, across the river from Belle Island. Defendant insists that Section 9 ceased to exist prior to the American Cut-Off of 1858 and that there was thereafter no such legal description until 1943, when St. George Richardson surveyed the area and the land was sold to defendant.

In Mills v. Protho, 143 Ark. 117, 219 S.W. 1017, it was held that under the 1901 Act where a gradual change in the course of a navigable river caused an island to form in front of plaintiff's land and within his original boundaries, and by accretion the island extended in front of defendant's land and within his original boundaries, plaintiff's title was limited to that part of the island within his original boundaries. In the Mills case, the court, at page 121 of 143 Ark., and page 1018 of 219 S.W., said: "This island when formed would, but for the operation of the statute, be the property of the state, and the rights of the parties must be restricted to such as were conferred by this statute. Islands thus formed and situated being the property of the state, it had the right to define the extent of its bounty in conferring title upon riparian owners whose lands had been washed away. The statute plainly cedes to

riparian owners only so much of the lands as is formed within their respective original boundary lines. If the interpretation claimed by appellant be adopted, it would nullify the plain purpose of the statute and encroach upon the statutory rights of other owners by giving, under the common-law doctrine of accretion, the whole of the island to one within whose original boundaries it began to form, notwithstanding the fact that in its growth it extended over into the original boundaries of other riparian owners. Nothing was said in the statute about acquisition of title by accretion. On the contrary, the statute is directed to the fixing of title to lands within original boundary lines, and gives to each owner the land formed within his original boundaries."

■ In view of the decision in the Mills case, it is unimportant whether Big Lakeport Towhead Island began to form within the original boundaries of Section 9 for, as stated in that case, the statute does not refer to acquisition of land by accretion, but merely gives to each owner the land formed within his original boundaries. It was unnecessary in the Mills case to decide the sufficiency of defendant's title but under the plain implication of the language in that case, as well as the plain meaning of the Act, it is unnecessary for application of the Act to establish that the land began to form within the original boundaries of the particular section to which title is asserted. To hold otherwise would result in an absurd and unwarranted construction of the Act.

■ We are of the opinion that the Act of 1901 is applicable and that upon formation of Lakeport Towhead Island in the late 1890's, that portion thereof within original boundaries of the former owners of Section 9 vested in their successors and was not the property of the State of Arkansas.

■ The Act of 1917 (Pope's Digest Section 8739 et seq.) is not so in conflict with the Act of 1901 as to require a holding that the 1917 Act repeals tne prior Act. The logical method of effecting a repeal of the 1901 Act, if that were intended, would have been the enactment of an express provision to that effect. It is well settled in Arkansas and elsewhere, that repeals by implication are not favored. Bartlett v. Willis, 147 Ark. 374, 227 S.W. 596; City Realty Co. v. Robinson Contracting

Co., 8 Cir., 183 F. 176. It is equally well settled that statutes relating to the same general subject must be construed together and, if possible, effect must be given to each in order to effectuate the legislative intent. McFarland v. Bank of State, 4 Ark. 410; Thompson v. Road Improvement District, 139 Ark. 136, 213 S.W. 386; Pace v. State, for the use of Saline County, 189 Ark. 1104, 76 S.W.2d 294.

Section 1 of the 1917 Act declares that islands formed in navigable streams in the state are the property of the State. Subsequent sections provide for a survey of the islands and prescribe a procedure for their sale and conveyance. Section 1 may reasonably be construed as applying only to islands not affected by the Act of 1901 and as constituting a logical prelude to the real purpose of the enactment, that is, to prescribe a method of selling State owned islands so as to get them on the tax rolls and have them put to productive use. We are referred to no case suggesting that the 1917 Act had the effect of repealing the Act of 1901. On the contrary, the cases seem to assume that no such repeal was intended. See, for example, Mills v. Protho, supra, 1920; Bush, Rec'r, v. Alexander, 1918, 134 Ark. 307, 203 S.W. 1028; Simpson v. Martin, 1927, 174 Ark. 956, 298 S.W. 861.

■ The defendant argues that any rights plaintiffs might have had under the 1901 Act were lost by failure to assert that right as provided by Section 5 of the 1917 Act, Pope's Digest, Section 8743. This section provides: "Pre-emption right of claimants. All bona fide claimants of lands of the character described in § 8739 (islands) shall have a preference right of one year after the passage of this act to apply for the survey and purchase of lands claimed by them, and, in the event of conflict between applicants, the question of preference rights and procedure to establish the same shall be determined by the Commissioner under such rules and regulations as he may prescribe not in conflict with the provisions of this act, and the determination of said Commissioner in the absence of fraud or collusion shall be final."

In support of this contention defendant cites Jones v. Euper, 182 Ark. 969, 33 S.W.2d 378, to the effect that bona fide claimants to islands located within navigable waters in the state must pursue the method prescribed by Section 5; and Conway

v. Shuck, 203 Ark. 559, 157 S.W.2d 777, 778, to the effect that the findings of the State Land Commissioner made regarding matters covered by Section 5 are conclusive. These cases however, do not involve a right asserted under the 1901 Act, and Conway v. Shuck holds that the Commissioner's findings are conclusive as to everyone "except * * * some person holding a claim of title from the State of Arkansas under some other statute, or from the State of Tennessee or through mesne conveyances originating from either State." While plaintiffs perhaps do not fall within the letter of the quoted exception, they do come at least within its intent. Furthermore, the State could not in this manner take away that which it had previously granted unconditionally. Dartmouth College Case, 17 U.S. 518, 4 L.Ed. 629, 12 Am.Jur.. 38 (Const.Law Sec. 406). Section 5 of the 1917 Act does not satisfy the requirement of due process as applied to one claiming under the prior act, for Section 5 merely gives preference in the purchase of the land and it would be slim protection to one who owns land as a result of a prior unconditional grant to give him a preference right to purchase it.

Having decided that the land which appeared within the original boundary of Section 9 became private property and did not belong to the State, it follows that the land was subject to taxation under Pope's Digest, Sec. 13597, which provides that, "all property, whether real or personal in this State; * * * shall be subject to taxation; and such property, * * * shall be entered on the list of taxable property for that purpose." Buckner v. Sugg, 79 Ark. 442, 96 S.W. 184.

There remains the vital and determining question whether the land in suit was actually taxed by the State, and whether plaintiffs and their predecessors actually paid the taxes on that land for 15 consecutive years, at least one payment having been made after passage of Act No. 199 of 1929, Pope's Digest, Sec. 8921. It has previously been shown that there appeared on the tax rolls and taxes were paid by plaintiffs' predecessors on "All 9, 510 acres" from 1872 to 1932, that from 1933 to 1935 inclusive, taxes were paid by plaintiffs' predecessors on "All on Island, Sec. 9, 510 acres," and that from 1936 to 1943 inclusive, plaintiffs and their predecessors paid taxes on "All on Belle Island, Sec. 9, 510 acres."

Any right in plaintiffs' predecessors in the land in suit as a result of the tax payments had accrued long prior to 1936 and therefore the only importance that can be attached to the fact that in that year the tax rolls began to list the land as "All on Belle Island, Sec. 9, 510 acres," is the indication that it was then the belief that Section 9 was located on Belle Island. However, the land located on Big Lakeport Towhead Island was taxable and the State chose for many years to place Section 9 on the tax rolls. Assume for the moment that the taxes on Section 9 as it appeared on the tax rolls had not been paid. Could it have been successfully argued that the State could not foreclose its tax lien on that part of Section 9 located on Big Lakeport Towhead Island because the parties during the taxable years believed that the taxes were assessed against land located on Belle Island? To ask that question is to suggest the answer. The intention of the State can only be determined by the action taken by it and that action was the placing of Section 9 on the tax rolls.

In Buckner v. Sugg, supra, it was held that privately owned property which had formed within the bed of a lake by gradual recession of the water was subject to taxation, although it had not been surveyed and that a description of the land which would have been proper if the public survey had been extended so as to embrace it, was sufficient on which to base a tax sale when considered with extrinsic evidence connecting the description with the particular tract sought to be charged. The court held that in order to make a valid assessment and sale of land for taxes the land must be described with such certainty as would fully apprise the owner and the public generally what lands are to be offered for sale in case the tax is not paid.

Maney v. Dennison, 110 Ark. 571, 163 S.W. 783, held that land formed by accretions to property abutting the Mississippi River became the property of private owners of the abutting land and though unsurveyed was subject to taxation and could be described in any manner sufficient to give the public notice as to what land was taxed. The land involved in the Maney case was placed on the tax roll as Fractional Section 4, Township 4 South, Range 4 East, and under that description was forfeited to the State for nonpayment of taxes.

There was no section of that description on the plats of the original survey because at.the time of the survey no part of Section 4 was in existence. The court held that the land was properly taxed and sold under the popular description according to extended lines of government surveys, on the theory that such description was sufficient to give notice concerning what land was being taxed.

In the present case the State intended to tax a tract of land which it described as Section 9. We believe that the description "all 9, 510 acres", and "all on Island, Sec. 9, 510 acres", was sufficient to apprise the world that the State was taxing that tract of land located within the boundaries of original Section 9 and that such description would have been sufficient on which to predicate a tax sale of the land in controversy had the taxes not been paid. The description "All 9, 510 acres" was sufficient to cover the area located in the geographical position of original Section 9 without further particularization, that is, without the statement of whether Section 9 was located on Belle Island, Big Lakeport Towhead Island, or partly on both islands. No valid reason is suggested for denying to plaintiffs the benefit of the 1929 Act, Pope's Digest, Sec. 8921, which was enacted to protect those who pay taxes assessed against wild, unenclosed and unoccupied land, within the state. Schmeltzer v. Scheid, 203 Ark. 274, 157 S.W.2d 193. In the Schmeltzer case it is said at page 277 of 203 Ark., at page 195 of 157 S.W.2d: "These statutes (sections 8920 and 8921, Pope's Digest) deal with the same subject and have a common purpose, that is, to encourage the payment of taxes, and to protect those who pay them, although the acts are applicable to different conditions, the one to persons who pay taxes under color of title, and the other to persons who pay without having color of title, and we are of opinion, therefore, that the holding of the case of Tawson v. Denson, supra [74 Ark. 302, 86 S.W. 661], is as applicable to the latter act as it was to the earlier one, which that case upheld."

The defendant insists that there was no such description as Section 9 during the years the taxes were paid, and in this connection relies strongly on certain language used by us in the case of Chicago Mill & Lumber Co. v. Tully, 8 Cir., 130 F.2d 268, 275. In that case it appeared that certain sectionalized land caved into the Mississippi River and new unsectionalized land was formed in the same area by accretion to remaining sections. We held that the owners of the remaining sections who paid taxes thereon over forty years were protected in their title to the accreted land as against one who paid·taxes on the description which the accreted land would have had if they had been sectionalized, and acquired tax titles thereto. It appears that both parties attempted to make tax payments on the accreted lands. In connection with that issue in the Chicago Mill & Lumber Co. case, we said: "Other Issues. Although the defendants have fully paid the taxes on the area in controversy under its proper and legal description as Sections 13 and 24 since 1899 and have attempted to make payments upon accreted lands in addition, it appears that plaintiff purposely forestalled them (there was a 'scramble') and acquired tax titles and paid taxes on the unsectionalized lands within the area upon descriptions such lands would have had if they had been sectionalized, and it asserts title under the tax sales pursuant to Section 8920, Pope's Digest, State of Arkansas. We think the master and trial court correctly held that plaintiff's payment of taxes upon the nonexistent descriptions was unavailing to deprive the defendants of their accretions. Plaintiff concedes that all of the area surveyed on the government plats as Sections 18, 19, 20, etc., caved into the Mississippi River and the present formation is all remade, reformed land, and not the land shown by the original survey. There are now no such legal descriptions. Bush, Receiver, v. Alexander, 134 Ark. 307, 311, 203 S.W. 1028; Wallace v. Driver, 61 Ark. 429, 433, 33 S.W. 641, 31 L.R.A. 317; Doebbling v. Hall, 310 Mo. 204, 274 S.W. 1049, 41 A.L.R. 382, 389, Annotation; Towell v. Etter, 69 Ark. 34, 59 S.W. 1096, 63 S.W. 53. The defendants were fully protected in their title by their tax payments upon their lands by proper legal descriptions for more than forty years. Crill v. Hudson, 71 Ark. 390, 74 S.W. 299; Mobbs v. Burrow, 112 Ark. 134, 165 S.W. 269; Towell v. Etter, 69 Ark. 34, 59 S.W. 1096, 63 S.W. 53; 67 Corpus Juris 829, § 241; 45 Corpus Juris 533, § 203."

The language quoted above must of course be considered in the light of the particular case in which it was used. Preferred Accident Insurance Co. of New

York v. Combs, 8 Cir., 76 F.2d 775. The fact that we said "there are now no such legal descriptions" does not preclude plaintiffs here from establishing title by tax payments for it is not vital to plaintiffs' position that there should have been an actual "legal description" of Section 9. It is only necessary for tax purposes that land be so described as to identify and distinguish it from any other tract. Buckner v. Sugg, supra.

■■■ The defendant insists that for years it believed that it was paying taxes on the land in suit by paying taxes on its tract located on the mainland to which defendant thought the land on Big Lakeport Towhead Island had become attached by accretion. In this regard defendant takes somewhat the same inconsistent position taken by plaintiff in the Chicago Mill & Lumber Co. case, supra, where we said: "The plaintiff also adduced evidence to the effect that the area in controversy was an independent island formation in the Mississippi River. This was in conflict with the allegations of the complaint and the testimony presented was not persuasive. Yet the plaintiff proceeded on the theory to the point of obtaining through Honorable Otis Page, Commissioner of State Lands in Arkansas, a State donation deed under authority of Act 282 of General Assembly of Arkansas, approved March 21, 1917, Sections 8739–8745, Pope's Digest, Laws of Arkansas, upon the representation that it was not accretion land but was an independent island formed after the admission of the State of Arkansas to the Union in 1836. The Commissioner testified, 'My information was that the party making application for this island deed had title to it (the land) and this was the quicker way to clear up that title.' The deed was issued without the inquiry required by the statute. Though we concur with the master and the trial court that there was no independent island formation, we cannot but ascribe significance to the plaintiff's conduct in respect to this claim. Its position in this court is that the proof of the fact that the accretion of the area in controversy was to its fractional section six is of such conclusive character that this court can and should strike down the finding of the master and the District court to the contrary. Yet the plaintiff itself was so lacking in confidence of its position that it obtained and adduced this contradictory testimony."

The fact remains that it is now established that Big Lakeport Towhead Island is an independent island formation and therefore the tax payments made on defendant's tract on the mainland under its legal description could not have constituted tax payments on the land in controversy.

The vital distinguishing features between the instant case and the Chicago Mill & Lumber Co. case are that here we are dealing with an independent island formation and not accretions to another mainland tract owned by one of the parties to the suit, and here the taxes paid on the land in controversy, if paid, were paid only by plaintiffs and their predecessors.

■■■ We have given careful consideration to the defendant's argument that tax payments made on Section 9 prior to the appearance of Lakeport Towhead Island west of the river must have been intended to apply to land which had formed as accretions to Sections 10 and 15 on Belle Island owned by plaintiffs' predecessors east of the river, regardless of the description of the area. From this defendant argues that the State did not intend to tax Big Lakeport Towhead Island until it was surveyed by St. George Richardson in 1943. There is nothing in the record to support this assertion. In fact, plaintiffs' predecessors would be protected in their title to the accretions to Belle Island by payment of taxes on Sections 10 and 15 by proper legal descriptions. Chicago Mill & Lumber Co. v. Tully, supra. Fractional Section 9 was on the tax rolls as early as 1869 and at that time there was no land subject to tax as Section 9. Later there was land in place on Belle Island in the geographical position of original Section 9. Gradually this land disappeared and at the present time there is no land on Belle Island located within the bounds of original Section 9. During a period of more than 70 years the State received revenue by taxing an area which it described as Section 9 and did not deem it essential to have the area surveyed periodically to determine just what changes had been wrought by the meanderings of the mighty Mississippi in order to describe the area taxed more accurately on the tax rolls. It may be that those paying the taxes did not know the exact location of Section 9. There is no suggestion in the cases cited by defendant that one cannot obtain title to land by adverse possession through payment of

taxes thereon for the statutory period under a description sufficient to apprise the world concerning what land is being taxed, in absence of a knowledge of the exact physical location of the land.

We are convinced that the District court reached a permissible conclusion and that the judgment for plaintiffs must be affirmed.

Affirmed.