## Mobbs v. Burrow.

Opinion delivered March 16, 1914.

1. Deeds—description of property—warranty as to quantity.— Where, after one description in a deed to real property, the words "in the aggregate 564.85 acres" are used, and after another "acres

unknown," the deed will be held to be a contract in gross and not by the acre, and the vendor does not by implication warrant the quantity. (Page 139.)

2. FRAUD AND DECEIT—ACTION FOR—EXPRESSION OF OPINION—SALE OF LAND.—Where the vendor of land expresses his opinion as to the number of acres in a tract which he proposes to sell for a lump sum, and not by the acre, but does not give his opinion in such a manner as to induce the vendee to act in reliance thereon, even though his statements were false, the vendee can not maintain an action for deceit against the vendor. (Page 139.)

3. ACCRETIONS—DEEDS—TITLE.—A deed to a tract of land carries the accretions thereto. (Page 140.)

Appeal from Perry Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*P. H. Prince* and *Sam Frauenthal,* for appellant.

1. A misrepresentation by a vendor of the quantity of land entitles the vendee to an abatement of the purchase price for the deficiency in the number of acres. 17 Vesey, Jr., 395; 61 Ark. 120; 19 *Id.* 102; 30 *Id.* 535; 47 *Id.* 148; 71 *Id.* 91; 100 *Id.* 28; 101 *Id.* 96.

2. The words "more or less" were not used, but the deed designates the number of acres. 47 L. R. A. 267; 19 Ark. 102.

*J. F. Sellers,* for appellee.

1. There was no fraud nor misrepresentation as to the acreage. The mention of quantity of acres after a certain description does not amount to a covenant of quantity. 95 Ark. 377; 19 *Id.* 103; 30 *Id.* 535; 71 *Id.* 91.

2. Including accretions, appellee got more land than the deed called for. 69 Ark. 38; 71 *Id.* 390.

3. No fraud nor misrepresentation was shown. 87 Ark. 570; 26 Ark. 31; 11 *Id.* 58.

HART, J. Grace M. Mobbs instituted this action in the chancery court against O. S. Burrow and A. H. Black. In her complaint she alleges that on May 12, 1908, she purchased from the defendant, O. S. Burrow, certain lands in Perry County, Arkansas; that Burrow executed to her a warranty deed therefor, and that the lands are described in the deed as follows: "All of fractional sec-

tion 11 (54.25 acres). The northeast quarter of section fourteen (14), (150.60 acres). The southwest quarter, east half of the northwest quarter, and the west half of the southeast quarter, all in section fourteen (14), township five (5), north of range sixteen (16) west, containing 320 acres, and northwest quarter of the northeast quarter, section twenty-three (23), township five (5), north of range sixteen (16) west, containing forty acres, and in the aggregate 564.85 acres. Also the west half of the northwest quarter of section fourteen (14), and the fractional east half of the northeast quarter, section fifteen (15), township (5) north, range sixteen, acres unknown.''

That the consideration was twelve thousand dollars, which was paid partly in cash, and that notes were given for the deferred payments. That Burrow falsely and fraudulently represented to her that the lands so conveyed amounted in the aggregate to 700 acres, without the accretions thereto. That in the fall of 1908, she had the lands surveyed and found that there were only 476.60/100 acres, making a deficiency of 223.40/100 acres. That the lands are worth twenty-five dollars per acre. That Burrow is insolvent, and after maturity of the notes for the deferred payments transferred some of them to the defendant, A. H. Black. The prayer of the complaint is that the amount of the value of the deficiency in said lands be credited upon said unpaid notes, and that the defendants be required to produce said notes in court and that the same be cancelled and removed as a cloud on her title to said land.

The defendant, O. S. Burrow, filed a separate answer, and denied that he represented that there was any specific number of acres in the land sold by him to the plaintiff, and denied that he made any representations whatever as to the number of acres in the various tracts conveyed by the deed executed by him to her.

The defendant Black filed his separate answer and cross-complaint. He denied that the defendant Burrow made any representations to the plaintiff as to the num-

ber of acres in the tracts of land sold by him to her.　He alleged that he became a purchaser of the notes for the unpaid purchase money, and in his cross-complaint asks that he have judgment for the balance due for the purchase money of the land and that a lien be declared upon the lands therefor.

The chancellor found in favor of the defendants and dismissed the complaint of the plaintiff for want of equity.　Decree was also entered in favor of the defendant, A. H. Black, for the amount found to be due on the purchase price of said lands and his vendor's lien ordered to be foreclosed.　The plaintiff has appealed.

F. J. Mobbs, the husband of the plaintiff, and who was her agent in the purchase of the lands, testified:

I lived at Hot Springs at the time the lands were purchased, and went with the defendant Burrow, who also lived there, to Perry County to examine the lands before purchasing them.　When we arrived at the lands it was raining, and we went hurriedly over them.　We did not go over to the river bank and observe whether or not any of the lands had caved into the river.　Mr. Burrow did not tell me that any of the lands had caved into the river, and represented to me that there were 700 acres in the tract.　This was outside of the accretions.

James Mobbs, the father of F. J. Mobbs, testified:

I went with my son to examine the lands when he purchased them.　Mr. Burrow and I rode over a part of the lands together in a buggy, and while I was with him he made no mention whatever of the lands having caved in.　I was not with him and my son during all the conversations on the trip that they had in regard to the lands.　Mr. Burrow and I did not go out on the river bank while we were looking at the land.

A tenant on the farm testified that he was in the field plowing when Mr. Burrow and Mr. Mobbs came to examine the land; that Mr. Burrow knew the land caved into the river from overflows, but that he does not remember whether or not Mr. Burrow said anything about that fact when they were looking over the lands; that

some of the lands have caved into the river since Mr. Mobbs purchased them.

D. Cross, another witness for the plaintiff, testified that he was on the train with Mr. Burrow when he went up to sell the lands to Mr. Mobbs; that Mr. Burrow told him he would be glad to have him help make the sale as he was familiar with the land; that he told Mr. Burrow that he would show them the lands, but would show the bad tracts as well as the good ones, and that the river was caving the land in and that he would not misrepresent it; that Mr. Burrow then told him to let them find out themselves.

O. S. Burrow testified for the defendants substantially as follows:

I never represented to Mobbs that the land I sold to his wife would amount to 700 acres or more. I told him that some of the land had caved in on account of overflows and that accretions had formed to other portions of them; that the accretions would probably equal the amount of land that had caved in. I showed him the tax receipts to the lands. I had owned the lands several years, and the description in the deed to Mrs. Mobbs was taken from the deed which conveyed the lands to me. 1 told Mobbs that the lands would amount to 500 acres, more or less, probably 600 acres; but I did not represent to him that they contained any certain or designated number of acres. The accretions to the land amounted to 187 acres, and a part of this is in cultivation.

In the case of *Ryan* v. *Batchelor*, 95 Ark. 375, the court held:

"1. When a vendor conveys for a specified price a tract of land which is described by metes and bounds or otherwise, with the words added, *containing a specified number of acres, more or less,* this is a contract not by the acre, but in gross, and does not by implication warrant the quantity.

"2. Where a statement was made merely as an expression of opinion or not in such manner as to induce

the other to act in reliance thereon, even though it was false, it will not sustain an action for deceit."

It is well settled, by a long and unbroken line of decisions, that the finding of fact made by a chancellor will not be disturbed on appeal unless it is against a clear preponderance of the evidence.

F. J. Mobbs, the husband of the plaintiff, and her agent in the purchase of the lands, testified that Burrow represented to him that the tract comprised 700 acres. He also stated that Burrow did not tell him that any of the land had caved into the river. An attempt is made to corroborate his testimony by that of his father, who went with him to examine the land. His father stated that he did not hear Burrow say that any of the land had caved into the river, but he admits that he was not with Burrow and his son at all times during the trip, and of course did not know of the conversation they had in his absence. His testimony, at best, is of negative character, and is entitled to but little probative force.

It is also insisted that the testimony of F. J. Mobbs is corroborated by that of D. Cross. Now the only misrepresentation or concealment that could be inferred that Burrow wanted Cross to make was for him not to tell Mobbs that the river was caving the lands in. The lands were situated on the banks of the Arkansas River, and accretions had formed to a portion of them, while other portions had caved into the river. The fact that some of the lands had caved into the river was patent to any one who looked at them; and Cross was informed that Mobbs was going to the lands for the express purpose of examining them. Then why should Burrow ask him to conceal a fact which would be patent to any person of ordinary understanding? We think the chancellor was justified in placing but little, if any, reliance upon his testimony.

The tenant also states that he did not hear Burrow say that any of the lands had caved in. He was with them but a short time, and it is not shown that there was any occasion for Burrow to have spoken of the land cav-

ing in during the time he was with them. On the other hand, he contradicts the plaintiff in some particulars. The plaintiff testified that it was raining when they went to examine the lands and on that account they did not make a thorough examination of them. The tenant testified that he was plowing in his field at the time they came to examine the lands; that he went with them over a portion of the lands, and after they left went back to his plowing.

Burrow testified positively that he did not represent to the plaintiff that the land contained, independent of the accretions, 700 acres. He says that he showed them his old tax receipts and told them that accretions had formed to some of the lands and that a part of these accretions were in cultivation; that other portions of the land had caved into the river and that, in his opinion, the accretions would about equal the quantity of land that had caved into the river.

It will be noted that the deed only recites a conveyance of 564.85/100 acres in the aggregate. It is specifically stated in the deed that the acreage in the last two tracts described is unknown. After the plaintiff purchased the land, it is admitted the thirty-five acres caved into the river, before the lands were surveyed in the fall of 1908. The survey showed that there were 476.60/100 acres of land in the tract. This would leave a deficiency of only fifty-three acres, which, considering the amount of land conveyed by the deed, is not material.

Some time after the deed was executed, at the instance of the plaintiff, Burrow conveyed to her, without additional consideration, the accretions, which comprised 187 acres. This was not necessary. The accretion was a part of the original tract and passed by the deed first executed to the plaintiff. *Crill* v. *Hudson,* 71 Ark. 390.

The decree will be affirmed.