WILLIAM L. HUFFMAN, APPELLANT, V. HENRY MOTOR
COMPANY ET AL., APPELLEES.

FILED JUNE 18, 1915.  No. 18139.

Carriers: BILLS OF LADING: DRAFTS: PAYMENT: RIGHT TO PROPERTY.
   Bills of lading are symbols of property, and when properly in-
   dorsed and delivered to a bank with drafts for the purchase price
   of merchandise attached, and the bank pays the amount of the
   drafts to the drawer, the bank is entitled to the possession of the
   merchandise until the drafts are paid in full.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE.  *Affirmed.*

*Charles W. Haller* and *Byron G. Burbank,* for appel-
lant.

*E. W. Simeral, contra.*

MORRISSEY, C. J.

Plaintiff was engaged in the automobile business in the
city of Omaha, and had in his employ Fred C. Hill, his
brother-in-law, and, being desirous of taking the agency for
the cars built by the Henry Motor Company without hav-
ing his name appear in the contract, Hill, acting for plain-
tiff, entered into a written contract with the motor car
company for the sale of that company's cars.  By the terms
of this contract the dealer was to pay freight and all cost
of transportation from the factory at Muskegon, Michi-
gan, to Omaha, and it was provided that the title and own-
ership in the cars should remain in the motor car company
until the purchase price was paid in full.  The dealer con-
tracted for not less than 50 cars.  The contract recites that
the sum of $200 was paid the manufacturer at the time the
contract was made to apply on the first shipment.  The
plaintiff's testimony fixes the amount at $300, and this is
not disputed.  On May 3, 1910, three motor cars were
shipped to Hill, and on May 24, 1910, another shipment
of three motor cars was made.  On each of these dates a

draft for the purchase price was drawn by the manufac-
turer on Hill, and the bills of lading were assigned and
delivered to the bank, and these drafts were cashed by the
National Lumberman's Bank of Muskegon, Michigan. The
drafts with bills of lading attached were forwarded to the
First National Bank of Omaha, and payment was de-
manded of Hill. He failed to make payment, and the six
automobiles, loaded in two freight cars, stood on the tracks
from about June 1 until about August 1, when Mr. De-
Mange, an attorney for the motor car company, went to
Omaha and made arrangements with Huffman, who now
says that he is the assignee of Hill, but admits that the
original contract was really made for his benefit, under
which Huffman paid the freight, demurrage, cartage, etc.,
and on an order from the National Lumberman's Bank
to the First National Bank of Omaha the motor cars were
placed in storage in a warehouse, and the warehouseman
gave his receipt for the motor cars to the First National
Bank, as agent of the National Lumberman's Bank, and
an arrangement was made whereby Huffman might re-
deem any one of the cars by paying one-sixth of the total
sum of the drafts. Huffman subsequently took out one of
the cars and paid the proper amount on the draft. The
other cars remaining unsold, four of them were later
shipped to Kansas City, Huffman assisting in making the
shipment. The sixth and last car being ordered shipped to
Kansas City, Huffman caused an attachment to be levied
thereon to cover the $300 deposit which had been made, and
the freight, demurrage, etc. Service was never had upon
the motor car company, but the National Lumberman's
Bank intervened, and filed an answer setting up its claim
under the drafts with bills of lading attached. The cause
was tried in the county court, and the parties stipulated
"that the right of possession to said motor car be tried in
this action without the necessity of resorting to other ac-
tions, possessory or otherwise." The court found that at
the commencement of the action the intervener, the Na-
tional Lumberman's Bank, was the owner of the property
and entitled to its possession. An appeal was taken to

the district court, where the same issue was tried to the court, with a finding and judgment in favor of the intervener, and plaintiff appeals.

The only issue is between plaintiff and the National Lumberman's Bank, and that is: The right to the possession of the car attached. The original contract made by Hill, in whose place Huffman stands, expressly provided that the ownership of the property should remain in the manufacturer until the dealer had paid therefor in full. It is clear, then, that at the time these automobiles were loaded in Muskegon, and the drafts drawn on the consignee with the bills of lading attached, the ownership was in the manufacturer. The indorsement and delivery of these bills of lading to the bank was in effect a delivery of the property (6 Cyc. 426; 4 R. C. L. 34, 35, 36), and the possession thus secured never passed from the bank. Under the contract of agency, plaintiff was bound to pay the freight, demurrage, etc. His deposit of $300 was not such a payment on these cars as entitled him to their possession. DeMange was not the agent of the bank, but was the agent of the manufacturer. The National Lumberman's Bank selected its own agent, the First National Bank of Omaha, and its telegraphic direction, which we find in the record, directed that it accept warehouse receipts for the six automobiles running to the bank in Omaha, as agent for the intervening bank, with receipts so arranged that the dealer might take out a car by paying the proportionate amount of the drafts. Huffman was bound to take notice of the interest of the National Lumberman's Bank at the time he claims he was dealing with DeMange, because the bills of lading were attached to the drafts, which were payable to the intervening bank, and the bank's interest and right of possession was apparent. While it is contended by Huffman that the cars were not according to the contract, and by the bank that Hill was unable to raise the money to meet the drafts, we are not called upon to decide any question between Huffman and the motor car company, for that company is not in court. The warehouse receipts, based

as they are upon the bills of lading, carry with them the right of possession.

No error is found in the record, and the judgment is

AFFIRMED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.