FRONTIER NATIONAL BANK OF EASTPORT, MAINE, *v.* SALINGER.

[No. 10,160.   Filed February 5, 1920.]

1. CARRIERS.—*Bill of Lading.*—*Assignability.*—A bill of lading is a muniment of title *quasi* negotiable and at common law transferable so as to pass title to goods in transit when such is the

intention of the parties, as effectually as if the goods themselves had been delivered. p. 483.

2. CARRIERS.—*Bill of Lading.—Draft Attached.—Rights Created by Transfer.—Attachment.*—A bank that discounts a draft on consignee with bill of lading attached, both indorsed to the bank, and places the proceeds to the credit of consignor, has a special property in the goods until the draft is paid in full, which right is superior to that of the shipper, is unaffected by any attempt by him to re-sell the goods, and, in the absence of any showing of fraud, is superior to that of the shipper's attaching creditors, since no attachable interest remains in the shippers. p. 483.

3. ATTACHMENT.—*Rights of Attaching Creditors.—Nature.*—An attaching creditor is not a purchaser, and obtains only the rights which the debtor has in the property at the time of the levy of the writ. p. 483.

From Marion Superior Court (102,007) ; *V. G. Clifford,* Judge.

Action by Isadore Salinger against the American Sardine Company and another, in which the Frontier National Bank of Eastport, Maine, intervened. From a judgment for the plaintiff, intervenor appeals. *Reversed.*

*Watson & Esarey, Philip Zoercher* and *Norman E. Patrick,* for appellant.

*E. W. Pyke, Charles Alcon* and *Holmes & McCallister,* for appellees.

McMAHAN, J.—This is an action by the appellee Isadore Salinger against the American Sardine Company, to recover a sum of money alleged to be due and owing him on account of cash laid out and expended for the benefit of the sardine company and for brokerage commissions, and to enforce the collection thereof by the attachment of certain canned sardines and fish stored with the appellee Shank Furniture and Storage Company. By agreement the

attached property was sold and the proceeds paid to the clerk of the trial court pending the action.

The appellant filed an intervening petition alleging that it was the owner of the goods attached and entitled to the proceeds arising from the sale thereof. The issues being closed, the cause was tried by a jury, and resulted in a verdict and judgment for the appellee Salinger for the amount of his demand and also on the issue in attachment, directing that money in the hands of.the clerk be applied on the judgment.

The contention of appellant is that the court erred in overruling its motion for a new trial, for the reasons that the verdict is not sustained by sufficient evidence and that it is contrary to law.

The evidence shows that in August, 1915, the American Sardine Company, shipped the goods which were attached from East Port, Maine, by common carrier to Indianapolis. There were two separate bills of lading. Part of the goods was consigned by E. W. Brown Company to themselves and assigned to the American Sardine Company, who in turn assigned the same to the appellant. The appellant was the consignee named in the other bill of lading. The goods mentioned in both of said bills of lading were shipped by the sardine company to Indianapolis with directions to notify J. P. Michael Company of their arrival. Upon receiving said bills of lading, the sardine company through the appellant drew two drafts on J. P. Michael Company for $175.82 and $522.05 respectively. Both of said drafts were indorsed by the sardine company to the appellant, and the amount of said drafts to wit, $697.87 was placed to the credit of the sardine company on the books of the appellant bank. For some reason not disclosed by the evidence J. P. Michael Company did not accept the goods

or pay the drafts which had been forwarded by appellant to its correspondent in Indianapolis for collection. Following the dishonor of the drafts, appellant notified the sardine company of that fact, after which the sardine company through a broker in Indianapolis undertook to bring about a settlement with J. P. Michael Company, and failing in that directed the broker to sell the goods to other parties if he could do so.

The drafts were never paid, and at the time of the trial had not been taken up by the sardine company. After the arrival of the goods in Indianapolis, they were stored in the warehouse of the appellee Shank Furniture and Storage Company, where they were located at the time this action was commenced, and the goods attached as the property of the sardine company.

The appellant contends that, under the facts, the title of the property described in the bills of lading vested in it. Appellant and appellee have each assumed in this appeal that the sardine company was named as the consignee in both bills of lading, and appellee's contention is that the assignment of the bills of lading to the appellant does not preclude an inquiry into the transaction surrounding the assignment; that while the indorsement of a bill of lading presumptively transfers the title to the property, the intention of the parties will control, and that there is sufficient evidence in this case to have warranted the jury in finding that the sardine company retained the right of alienation, and that the property was subject to be attached as its property.

It is well settled that a bill of lading is a muniment

of title, *quasi* negotiable (*Pattison* v. *Culton,* 33 Ind.
240) and at common law transferable so as to
1. pass title to the goods *in transitu,* when such
is the intention of the parties, as effectually
as if the goods themselves had been delivered. 4 Am.
and Eng. Ency. Law (2d ed.) 546.

"Where the consignor draws on the consignee for
the purchase money and the draft with the bill of
lading attached is endorsed or transferred to
2-3. some one who discounts the draft, a special
property in the goods passes to the transferee,
subject, however, to be divested by acceptance and
payment of the draft. Under these circumstances
the goods are pledged for the payment of the draft,
and the party paying the draft is entitled to posses-
sion of the goods until the draft is paid in full. The
position of the transferee, it is said, is similar to that
of a mortgagee in possession, and he is under no
necessity to file papers to preserve his lien. This
right of the transferee before payment of the draft
is superior to that of the shipper, and in the absence
of any showing of fraud is superior to that of the
shipper's attaching creditors, for the reason that no
attachable interest remains in the shipper. The rule
applies although no money has actually been advanced
to the consignor before the attachment. It is suffi-
cient that the consignor has been given credit there-
for. In the application of the rule it is likewse im-
material that the party paying the draft had obtained
a guaranty from the consignee that the draft would
be paid. The rule also applies whether the party pur-
chased or was merely a pledgee of the draft." 10 C. J.
202, §267, and authorities cited.

In *Walsh* v. *First National Bank,* 238 Ill. 436, 81
N. E. 1067, it was held that the indorsement and

delivery by a shipper of a bill of lading of a shipment of flour, with a sight draft attached to a bank who credited the shipper's account with the amount of the draft, operated as a symbolical delivery of the flour and vested the title in the bank. "The transaction," said the court, "between the appellee and the milling company was an ordinary business one, of every day occurrence, entirely free from fraud or fraudulent intent. There was no claim of fraud or collusion affecting the rights of appellant or any creditor.  *  *  *  In such a case an attaching creditor only obtains the rights which the debtor has in the property at the time of the levy of the writ. One claiming to be the creditor of another and levying a writ of attachment is not a bona fide purchaser for a valuable consideration. He parts with nothing in exchange for the property and does not take it in satisfaction of his claim or debt.  *  *  *  The milling company had transferred the flour to the appellee by the endorsement and delivery of the bill of lading, and appellee had given credit on the deposit account for the amount of the draft. The milling company would have no right to repossess itself of the flour without payment of the draft, and appellant has no better right. This is true, whether the amount of the credit by the bank has been checked out or not." This is a correct statement of the rule as applied to the facts in this case and is well supported by the authorities.

The fact that the sardine company after the failure of J. P. Michael Company to receive the goods shipped, attempted to effect a settlement with the Michael company and failing in that, to have the goods sold by a broker to some other person, does not change or affect the rights of appellant.

We hold that the verdict is contrary to law, and that the court erred in overruling appellant's motion for a new trial.

Judgment reversed, with instructions to grant a new trial and for further proceedings in accordance with this opinion.