CENTRAL COLOSO, INC., Plaintiff and Appellant, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 6450.   Argued February 12, 1935.—Decided April 5, 1935.

*M. Acosta Velarde* for appellant. *Benjamin J. Horton, Attorney General,* and *M. Rodríguez Serra, Assistant Attorney General,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action to recover taxes paid. The plaintiff, Central Coloso, Inc., is a corporation organized in accordance with the laws of this island, engaged in planting and grinding cane and in the manufacture of sugar. It borrowed a large sum from the Irving Bank Columbia Trust Co., a banking institution with its main office in the city of New York, and paid interest on the same during the year 1924. The public deed which definitely legalized the transaction was executed in San Juan, Puerto Rico, Charles W. Fowler representing the bank. After the defendant Treasurer of Puerto Rico had investigated the case, he determined the income tax on said interest at $1,198.98, assessed it at its

source, and demanded payment from the plaintiff, which paid the sum under protest on September 30, 1930, later filing this action for its recovery. The district court decided against the plaintiff, which appealed to this Supreme Court.

The appellant maintains that the decision of this court in the case of *Central Eureka, Inc.* v. *Gallardo,* 42 P.R.R. 617, is applicable to the present case, and that therefore the judgment appealed from should be reversed. The appellee says that the situation is different, as in the case of Central Eureka the foreign corporation which made the loan had an agent in Puerto Rico to whom the interest was paid, whilst here, although the foreign creditor corporation had an agent in Puerto Rico, the interest was not paid to said agent.

The rule laid down in the case of *Central Eureka, Inc.* v. *Gallardo, supra,* to quote from the syllabus, is as follows:

"Even though a foreign banking corporation does not comply with the local statutory requirements for doing business in the Island, if it actually has here a place of business, office, or agent to whom interest subject to taxation is paid on loans made locally, the person making such payments of interest is not bound to withhold and pay into the Insular Treasury the taxes due on those payments."

██ The defendant admitted the existence of the agent in Puerto Rico, but he maintained that the interest was not paid to him. We have examined the evidence and we think that it shows that the payment was in fact made to the agent in Puerto Rico. We shall merely transcribe a part of the testimony of Mr. Comas, Assistant Treasurer of the Central, which is cited by the appellee itself, and refer to the cases on which it relies.

The testimony reads thus:

"Q. In what manner was the collection of the proceeds of the sugar made?—A. The sugar was sold, the order of sale of the sugar was given to the agent in the States, and the sale was made; and after shipment *the bill of lading was delivered* to Mr. Fowler, agent of the Irving Bank, who sent it to his main office in the States. There the bank collected the advances from the purchaser of the

sugar and applied it to the account, cancelling the obligation, or carrying or remitting the balance.—Q. But was the interest collected there, in that operation, the interest which was owed?—A. It was already discounted, from that time. . . .—Q. In reality there was no payment in cash, but only a subtraction operation?—A. Yes, sir, a subtraction.—Q. Something abstract?—A. Yes, sir.—Q. But in reality the payment of the money was made by means of the sugar? —A. Yes, sir.—Q. It was a payment in kind of the obligation?—A. Yes, sir.—Q. Of the obligation whatever it might be?—A. Yes, sir. . . —Q. The details of the operation, the bill of lading, it was issued in Puerto Rico in whose favor?—A. Of the Irving Bank.—Q. And was the bank the only person which could collect the proceeds of the sugar?—A. Yes, sir, the bank was the only person.—Q. In reality the bank was the only person which could finally dispose of the sugar in New York?—A. Yes, sir.—Q. Those bills of lading were delivered in Puerto Rico to the Agent of the Bank?—A. Yes, sir.—Q. But you made no payment whatever to the agent of the Bank in Puerto Rico? —A. No sir.''

And the rule relied on is as follows:

''A bill of lading is a symbol representing the goods, and delivery of the bill is a delivery of the goods.'' *Baker* v. *Central Grocery Co.*, 83 S. E. 504, 505, 15 Ga. App. 377.

In support of this rule the following cases are cited: *Frontier Nat. Bank of Eastport, Me.* v. *Salinger*, 126 N.E. 40, 41, 72 Ind. App. 479; *Kansas City Southern Ry. Co.* v. *Mabry*, 165 S.W. 279, 281, 112 Ark. 134, and *Huffman* v. *Henry Motor Co.*, 153 N. W. 566, 98 Neb. 517; and sections 697 and 690 of the Code of Commerce, 1932 ed., which provide:

''Sec. 697.—Bills of lading may be made the basis of a summary action or compulsory proceedings as the case may be, for the delivery of the cargo and the payment of the freight and proper expenses.''

''Sec. 690.—Bills of lading issued to the bearer and sent to the consignee shall be transferable by the actual delivery of the instrument; and those issued to order by virtue of an indorsement.

''In either case, the person to whom the bill of lading is transferred shall acquire all the rights and actions of the assignee or indorser with regard to the merchandise mentioned therein.''

Accordingly, the delivery of the bills of lading to the agent in Puerto Rico was equivalent to the payment of the interest, and the situation is in reality the same as that in the *Eureka* case. Perhaps it is well to add that both cases involve the same creditor corporation, the Irving Bank, acting through the same agent, Mr. Fowler.

The judgment appealed from must be reversed and another rendered for the plaintiff, without special imposition of costs.

Mr. Justice Wolf concurs in the result.