SHELTON v. BYROM.

4-7207                                           177 S. W. 2d 421

Opinion delivered January 24, 1944.

*Coleman & Gantt,* for appellant.

*Hooker & Hooker,* for appellee.

McHANEY, J. On June 9, 1889, Thomas Collier and wife conveyed by warranty deed to Pleasant Tate all the southwest fractional quarter of section 7 lying on the left or east bank of "Water-Seca Bayou" in township 4 south, range 7 west, containing 147 acres, more or less. On November 16, 1889, Pleasant Tate and wife conveyed a portion of the same land to their daughter, Amanda. Palm, by warranty deed, describing it by metes and bounds, as follows: "Beginning at the northwest corner of the fractional southwest quarter of section 7, township 4 south of range 7 west, thence east 37 chains and 17 links, thence south 6 chains, thence west 24 chains and 75 links, thence south 25 chains to the center of Wabbaseka Bayou, thence northwestwardly with the meanders of said bayou to a point where the range line between township 4 south, range 7 west, and township 4 south, range 8 west, intersects said bayou, thence north along said range line to the point of beginning, containing 50 acres, more or less, situated in southwest quarter of section 7, township 4 south, range 7 west." Said deed recited that the conveyance was to Amanda Palm in fee simple forever, on the following conditions, to-wit: "Said lands are given to the aforesaid Amanda Palm, for her sole use and benefit during her natural life, free from the control of her said husband, and to her children after her death, and should the said legatee die without children or grandchildren then the above granted real estate shall revert to the heirs of her brothers and sister, who hold deeds to portions of southwest half, section 7, township 4 south, range 7 west, of even date herewith."

In 1917, the General Assembly enacted Act No. 299, creating No Fence District No. 2 of Jefferson county, embracing the tract of land here involved and other lands. Benefits were assessed against said lands and· installments thereof were extended annually on the tax books of Jefferson county to be collected by the collector.

Amanda Palm, who took only a life estate in the tract conveyed to her by her .father, died on or about August 13, 1926, leaving surviving her the appellee .as her sole heir at law and she became the fee owner thereof on the death of her mother, and they have been in possession of same either in person or by tenants from November 16, 1889, down to a time after this suit was filed on May 14, 1941, or for a period of more than 52 years.

The no-fence tax on this, tract of land was 30 cents per year, or 1 cent per acre per year. This tax was not paid for the years 1930, 1933, 1934 and 1935, and, in July, 1937, suit was filed by the district against this and other land to .foreclose the lien for said delinquencies. The complaint alleged the name of the supposed owner for the 1930 tax as J. S. McDonnell & Co., and described the land as "Pt. SW Frl. ¼ Sec. 7," township 4 south, range 7 west. For 1933, 1934 and 1935, said complaint alleged the supposed owner to be The McDonnell Co., State and State, respectively, and for each year described the land as being in the same section, township and range as above set out and by metes and bounds, as follows: "Beg at NW Cor SW¼ 7 E 37.17 Ch S 6 Ch W 24.75 Ch S 25 Ch to Cent of Wabb Bayou Th westerly along said bayou to intersection of W line Sec. 7 Th N to Beg." We assume that the notice published followed the descriptions in the complaint, although the proof of publication had been lost. The decree of foreclosure recites the publication of a notice for the time and in the manner provided by law, "which published notices each contained a list of said delinquent lands, the supposed owners thereof and the amount due .thereon respectively as required by law, as shown by the proof of publication of said notice filed herein," etc. Said decree condemned said land to be sold for the taxes for said four years and

was entered March 9, 1938, and on July 18, 1938, the commissioner theretofore appointed by the court for the purpose sold said land to appellant for the sum of $4.84, being the amount of the tax, interest, penalty and costs for said four years, and issued to him a deed therefor, which was approved and confirmed by the court.

This tract of land forfeited for the state and county taxes for the year 1933 and was sold to the State, and, on April 27, 1937, appellee purchased same from the State and received a deed from the Commissioner of State Lands at a cost of $31.

Appellant undertook to obtain possession of said land after his purchase at the commissioner's sale and to interfere with the tenant thereon. Appellee, on May 14, 1941, brought this action in the chancery court, asserting title as above, and to cancel the commissioner's sale to appellant, to enjoin him from asserting title thereto and to permit her to redeem therefrom, alleging that she was the owner and in possession thereof. Appellant answered, asserting title in himself by reason of said sale, denying appellee's allegations and alleging he had possession, which was conceded by appellee, and her complaint was amended to this effect and she moved to transfer to the circuit court. She also asked to recover the rental value of said land which was alleged to be $150 per annum while appellant was in possession. The cause was transferred to the circuit court and on a trial the court held that the foreclosure sale was void for two reasons: 1st that the complaint in the chancery suit of the district did not make appellee a party and she was not proceeded against in the action, although she was in actual possession, cultivating the land by tenant, but instead of listing her as the supposed owner, others were so listed as set out above, and that she did not know of the pendency of the action; and 2d, that the description of the land for the 1930 tax as "Pt. SW Frl. ¼" was a void assessment, and that judgment was taken for a lump sum for four years' taxes and the property so sold rendered the sale void as a whole. Judgment was entered for appellee for the possession of said land and for

$150 against appellant for two years rent for 1941 and 1942 at $75 per year. This appeal followed.

This is a collateral attack on the chancery decree condemning this land for sale for said four years. If the decree is void for want of jurisdiction, then, under many decisions, it may be so attacked. It is virtually conceded that the description employed, both in the complaint and notice, for the 1930 tax is void and that the court's decree for that year's tax is likewise void. The trial court, and apparently counsel also, have assumed that the metes and bounds descriptions for the other three years are good, but we cannot say that such is the fact. It will be noticed that the descriptions, one of which is copied above, use the word "Beg," the letters "Cor," "Ch," "Cent," "Th," and "Wabb Bayou," no doubt all intended for abbreviations for the words Begin, Corner, Chains, Center, thence and Wabbaseka Bayou. In *Brinkley* v. *Halliburton,* 129 Ark. 334, 196 S. W. 118, 1 A. L. R. 1226, in an exactly similar tax sale in St. Francis Levee District, a description as "N. of R. R. frl. S.W. ¼, section 26, T. 6 N., R. 7 E., 125 acres" was held to be insufficient and the sale voided on collateral attack, it being there said: "Being a special proceeding *in rem* on warning order, it was necessary to correctly describe the land in order to confer jurisdiction on the court decreeing the sale." Citing and quoting from *Beck* v. *Anderson-Tully Co.,* 113 Ark. 316, 169 S. W. 246. It must be remembered that appellee was not served with a summons and was not named as a supposed owner for any of these years nor was her mother, although she and her mother had been the record owners since 1889. It is universally true, so far as we are advised, that in a tax proceeding of this kind that, for a tax assessment and sale based thereon to be valid, "the land must be described with certainty upon the assessment rolls and in all subsequent proceedings for the enforcement of payment of the tax. . . . The chief reason for this requirement is that the owner may have information of the charge upon his property. It has sometimes been said that a description that would be sufficient in a conveyance between individuals would generally be sufficient

in assessment for taxation. We do not, however, consider that a safe test. The description in tax proceedings must be such as will fully apprise the owner, without recourse to the superior knowledge peculiar to him as owner, that the particular tract of his land is sought to be charged with a tax lien. It must be such as will notify the public what lands are to be offered for sale in case the tax be not paid."

This language was quoted in *Brinkley* v. *Halliburton, supra,* as also the following by Mr. Justice RIDDICK in *Cooper* v. *Lee,* 59 Ark. 460, 27 S. W. 970, that "A description which is intelligible only to persons possessing more than the average intelligence, or the use and understanding of which is confined to the locality in which the land lies, is not sufficient." It was further said in that case: "A description of land by the abbreviations commonly used to designate government subdivisions sufficiently identifies it; but the use of abbreviations in a tax assessment or notice must be confined to those commonly used and understood." The conclusion reached in the Halliburton case is that: "The abbreviation 'R. R.' does not necessarily convey the meaning of railroad to one of ordinary experience in land titles," and the sale was held void. In *Guy* v. *Stanfield,* 122 Ark. 376, 183 S. W. 966, a sale for state and county taxes under a description reading: "Ex. 10 A. Sq. NE Cor. S½ SE 26-11-11" was invalid because the description was improper and it was said "the description must be intelligible, not only to the expert, but also to one who is only ordinarily versed in such matters." See, also, *Buchanan* v. *Pemberton,* 143 Ark. 92, 220 S. W. 660, to the same effect and where a number of our cases are collected and cited.

We think the descriptions by metes and bounds here involved was defective, incomplete and unintelligible to any person only ordinarily versed in such matters, including appellee who does not appear to be of that standard. The abbreviations used are not those commonly used to designate government subdivision, and, while they may be intelligible to the ordinary person in the locality where the land lies, they most probably would not be to

others in other localities, or to the public, and such descriptions are not, therefore sufficient.

Whether the sale *en masse*, including the tax for the year 1930, which description is conceded to be bad, renders the whole void, even though the land was properly described for the other years, is not now decided, as it becomes unnecessary to do so by reason of what we have already said. Nor do we determine whether the sale was also void by reason of naming a person as supposed owner who had no interest in the land.

Affirmed.

Griffin Smith, C. J., Smith and McFaddin, JJ., dissent.

McFaddin, J., (dissenting). There is a clear distinction between the sufficiency of the description of property: (1) in a tax sale (which is a proceeding *in invitum*); and (2) in a chancery foreclosure sale of an improvement district lien (which is a proceeding *in rem*). The majority opinion fails to recognize this distinction. The case at bar is a collateral attack on a foreclosure sale; and the majority is allowing proof about a published notice (which has been lost) to defeat, on colalteral attack, a chancery foreclosure sale and order of confirmation. The chancery court entered a decree of condemnation and order of sale on a complaint that correctly described the property; and the chancery court confirmed the report of sale where the property was fully and completely described.

I am authorized to state that the Chief Justice joins in the views stated in this dissenting opinion.