PLANT *v.* SANDERS.

4-7617                              189 S. W. 2d 720

Opinion delivered October 8, 1945.

*O. T. Ward* and *J. M. Smallwood*, for appellant.

*Linus A. Williams, Joe D. Sheppard* and *J. J. Montgomery*, for appellee.

McHANEY, J. Plant brought this action against appellees who are the widow and heirs-at-law of W. C. Sanders, deceased, under whose will Lula Sanders was given a life estate in the lands here involved with remainder in said heirs to enjoin them from interfering with his alleged possession of said lands. He claimed to be the owner and in possession of said lands, and that appellees were entering upon same and interfering with his tenants. He did not deraign his alleged title to said lands, but the facts are that same forfeited and were sold to the state in

1931 for the taxes of 1930, and remained in the state until September 28, 1940, when the then Land Commissioner executed and delivered a deed therefor to said Plant.

Appellees answered with a general denial and pleaded by way of cross-complaint that they were the owners and in possession of said lands, and alleged a number of grounds of invalidity of said tax forfeiture and sale to the state. They also alleged that the deed from the state to Plant was and is void for the reason that said lands had been classified by the Land Use Committee of State Planning Board on August 29, 1939, as agricultural lands, suitable for settlement or for private ownership, and that said committee had appraised said lands at a minimum value of $1 per acre as required by Act 331 of 1939, and that the State Land Commissioner, instead of selling same to the highest bidder, as required by said act, sold same at private sale to said Plant.

Trial resulted in a decree holding that the forfeiture and sale to the state of a portion of the lands was void for incorrect or indefinite descriptions and as to the remainder the sale was held good. The sale to Plant was canceled as to part and held good as to the remainder. Both parties were dissatisfied, and there is here a direct and cross-appeal. Pending trial in the lower court, Plant died, and the cause was revived in the name of his daughter in her own right and as executrix of her father's estate. The state's title to this and other land was confirmed on February 15, 1938.

As stated above, said lands were forfeited and sold to the state in 1931 for the nonpayment of the 1930 taxes. They were described on the tax books and in the delinquent notice, which was duly published, and in the confirmation decree of February 15, 1938, as follows:—all being in Johnson county and in township 8 north, range 22 west:

| Parts of Section | Sec. | Area | Year |
|---|---|---|---|
| SW | 17 | 160 | 1930 |
| S SE | 17 | 80 | 1930 |
| E SE | 18 | 80 | 1930 |
| E NE | 19 | 20 | 1930 |
| NE | 20 | 58.87 | 1930 |
| NW | 20 | 98.30 | 1930 |
| Accretions and other lands | 20 | 60 | 1930 |

As to the description E NE of 19, 20 acres, it is conceded that appellees never owned this tract and it passes out of consideration. On a trial of the case the court held that the first three descriptions as above listed were good and that the sale to the state and the confirmation decree above mentioned and the deed from the state to Plant of September 28, 1940, gave a good title to Plant and his successor, appellant. As to the last three mentioned descriptions above listed the court held that they were indefinite and that the sale by the collector in 1931 of these three tracts was and is void for lack of power to sell, and that the state's deed to Plant of these tracts should be and is canceled.

On the direct appeal, appellant challenges the correctness of the court's action in canceling the deed to Plant of these last three mentioned tracts, and we agree with appellant as to the first two of them, that is the NE of section 20, 58.87 acres; and NW of section 20, 98.30 acres. Just why the court held them indefinite and void is not revealed by the decree. We assume that it was because of the acreage mentioned after each description which is less than a full quarter section in each case. Certainly a conveyance of the NE of section 20 means the northeast quarter of said section and would convey all the land in the northeast quarter, whether a whole or a fractional quarter. It so happens that the section 20 here involved is fractional as indicated by the acreage listed after these descriptions and as shown by the government plat. This is caused by the Arkansas River which runs through section 20, and only these two tracts in the north half of section 20 lie north of the river. "The acreage

mentioned in a government call of lands does not control or dominate the description. Wherever one is granted land by government call, he takes the whole of the call without reference to the amount of acreage added to the description. In other words, if one is deeded the northeast quarter of any particular section containing any particular number of acres, he would take the whole quarter section, irrespective of the number of acres mentioned.'' *Turner* v. *Rice,* 178 Ark. 300, 10 S. W. 2d 885. See, also, *Bartel* v. *Ingram,* 178 Ark. 699, 11 S. W. 2d 488.

Nor does the failure to use the word ''fractional'' before these descriptions in section 20 invalidate the descriptions employed. *Chestnut* v. *Harris,* 64 Ark. 580, 43 S. W. 977, 62 Amer. St. Rep. 213, and cited in *Rucker* v. *Ark. Land & Timber Co.,* 128 Ark. 180, 194 S. W. 21. We conclude that the court erred in canceling these two descriptions from the state's deed to Plant. We agree that the last tract set out above and described as accretions and other lands in section 20, 60 acres, is void for indefinite description and was properly canceled by the court in Plant's deed.

On cross-appeal, appellees contend that the court erred in holding the second and third descriptions above set out, that is, S SE of section 17 and E SE of section 18, good and valid descriptions in a tax assessment and sale, and we agree with the appellee. A description identical with these was held bad in *Cooper* v. *Lee,* 59 Ark. 460, 27 S. W. 970, where it was held that a description ''N. NE. Sec. 3, Town. 15, Range 6, 87.19 acres'' was not a description by abbreviations the knowledge and use of which is so general as to warrant the court in holding that they sufficiently identify the land to be sold. ''On the contrary,'' says the court, ''we hold that it was not a sufficient description, and that the sale of the land must be treated as a sale without notice, and therefore void.''

So far as our investigation discloses *Cooper* v. *Lee* has never been overruled. It is cited with approval in many cases, one of the latest being *Shelton* v. *Byrom,* 206 Ark. 665, 177 S. W. 2d 421. It was distinguished in *Chestnut* v. *Harris,* 64 Ark. 580, 43 S. W. 977, 62 Am. St. Rep.

213. We, therefore, hold said descriptions S SE of Sec. 17 and E SE of Sec. 18 were insufficient "and that the sale of the land must be treated as a sale without notice, and therefore void."

Appellee on cross-appeal also contends that the sale of all the lands first above described is void because the levying court did not vote or levy a tax against said lands for the year 1930. We think the record of said court contradicts appellees in this contention. It recites the following: "On motion of C. E. Quick, seconded by A. F. Porter, a levy of five mills on the taxable property of Johnson county to defray the expenses of the general county expenses for the fiscal years 1930 and 1931 was made." It is argued that the motion of Quick was not submitted to a vote of the members, no vote taken, or the record does not show the motion was carried by a majority or unanimously. See § 2523, Pope's Digest. The record affirmatively shows that the levying court met at the proper time and place with a majority of all the justices of the peace present, and it affirmatively recites that "on the motion of Quick a levy of 5 mills on all taxable property—was made." We think this recitation necessarily implies that a vote was taken with a majority or all of the justices voting for it. Certainly after confirmation of the sale to the state this question is foreclosed against appellees. The same thing is true with reference to the other levies made for bond, road, municipal and school tax.

Another attack made on the sale is that there was included in the amount for which the land was sold to the state an illegal and excessive charge of 10 cents per tract on said lands which renders the sale void under the authority of *Lumsden* v. *Erstine,* 205 Ark. 1004, 172 S. W. 2d 409, 147 A. L. R. 1132. We think the charge is proper under § 13857 of Pope's Digest, and the contention that, because the land was sold to the state instead of to an individual this charge is not proper, is without merit. As said by Judge HEMINGWAY, in *Goodrum* v. *Ayers,* 56 Ark. 93, 19 S. W. 97, with reference to a certain statute cited: "It contemplates that the land shall be offered for an

ascertained and definite amount, including tax, penalty and costs, and that the tract, or a part of it, shall be sold for exactly that sum, either to an individual or the state.''

The only other point raised by appellees we deem it necessary to discuss is the alleged failure of the State Land Commissioner to comply with Act 331 of 1939 and that because thereof his deed to Plant is void. This question has given us a great deal of concern. We have definitely reached the conclusion, however, that there was no violation in this case of said Act by the then Land Commissioner. It provides by § 4 for an inspection, classification and appraisal of state-owned land according to its most appropriate use by the Land Use Committee of the State Planning Board, and in § 5, among other things, that ''state lands shall be classified as to whether they should be retained in public ownership allocated for agricultural settlement, as provided in § 6, or returned to private ownership through sale or donation'' and the classification may be changed, and the commissioner shall make deeds to the lands with this classification ''and only lands classified as suitable for return to private ownership shall be subject to sale to private individuals by the Commissioner of State Lands.'' Said section makes a number of other provisions, among them that the Commissioner ''shall offer the land for sale to the highest bidder, provided his bid is at least equal to the appraised value, and thereafter no land shall be sold for less than its appraised value; provided that pending appraisal by the Land Use Committee of the State Planning Board the Commissioner of State Lands is hereby authorized to continue sales of state lands as provided for in § 8631 of Pope's Digest.''

The deed to Plant recited that the lands therein conveyed ''were on August 29, 1939, classified as agricultural lands suitable for return to private ownership through sale or donation, and appraised by the Land Use. Committee of the State Planning Board as provided by § 5 of Act 331 of 1939.'' It then recited that Plant had applied to purchase same and had paid $557.17, ''the amount required by Act No. 129 of 1929, and having otherwise fully complied with the provisions and require-

ments of said act," then follows the conveyance of said lands to Plant. This deed is somewhat self-contradictory in its terms. It first says the lands were classified as agricultural lands and appraised by the Land Use Committee, as provided by § 5 of Act 331 of 1939, but proceeds to sell same in accordance with Act 129 of 1929, as permitted in § 5 of said Act 331, "pending appraisal by the Land Use Committee." This strongly, if not conclusively, shows that there had been no appraisal of said lands by said committee. We think also that there was no appraisal of said lands, or any other state-owned lands, as contemplated by said Act 331, on August 29, 1939, as recited in said deed, as the record of the minutes of the meeting of said committee shows the following: "Mr. C. E. Palmer then made a motion that, effective September 15, all tax forfeited lands, now owned by the state and now subject to sale or donation, be appraised at a minimum of $1 per acre. These appraisals to be subject to revision as specific appraisal reports are filed by the Committee with the State Land Commission." This motion was adopted. Mr. Palmer then pointed out that the committee had a big job ahead to get "these specific appraisals made" and that since there was no money appropriated for salary and travel expenses of inspectors to make appraisals, some other method would have to be devised," etc. We think this conclusively shows there was no inspection or appraisal of these lands as said Act 331 contemplates. No appropriation was made by the legislature for this purpose until 1941 in Act 260 and we think that the deed of the Land Commissioner was not invalid under § 5 of said Act 331 of 1939, but that the proviso therein gave express authority to make the sale under Act 129 of 1929.

The decree will, therefore, be affirmed in part and reversed in part as herein set out and the cause remanded with directions to enter a decree in accordance with this opinion. Each party shall pay one-half the costs in both courts.

HOLT and ROBINS, JJ., dissent.