SANDERS v. PLANT.

4-8241                                    204 S. W. 2d 323

Opinion delivered June 23, 1947.

Rehearing denied September 22, 1947.

*Linus A. Williams, Joe D. Shepherd* and *J. J. Montgomery,* for appellant.

*George O. Patterson* and *J. M. Smallwood,* for appellee.

MINOR W. MILWEE, Justice. The facts out of which this litigation arose are stated in the opinion on a former appeal and will not be repeated, *Plant* v. *Sanders,* 209 Ark. 108, 189 S. W. 2d 720. As appears from that opinion, there was involved the validity of the sale of the lands

there described for the non-payment of the taxes due thereon for the year 1930, which sale had been confirmed by the state. The opinion in that case sustained the title of Plant, who had purchased from the state, as to certain of the lands, but held the sale of others void because of defective descriptions.

Upon the remand of the cause Mrs. Louise Plant Eads, Plant's successor in title, applied for a writ of assistance praying that she be awarded posssssion of the lands to which her title had been upheld. L. H. King acquired this title and made himself a party. He adopted the pleadings which Mrs. Eads had filed and without reciting them it may be said that the question presented for decision in the trial court was that of the ownership of the 60 acres of accretions to the northeast quarter (NE¼) and the northwest quarter (NW¼) of section 20, township 8 N, range 22 west, Johnson county, Arkansas.

The chancellor held that in as much as the intervenor's grantor had purchased all these lands from the state and had received the deed of the State Land Commissioner therefor, and in as much also as the former opinion upheld the sale of the northeast quarter, section 20, containing 58.87 acres, and the sale of the northwest quarter of that section, containing 98.30 acres, the sale thereof carried the title to the 60 acres of accretions to these two fractional quarter sections. Upon that finding the court awarded the writ of assistance as prayed for and from that decree is this appeal.

For the affirmance of this decree appellee cites and relies upon the case of *Towell* v. *Etter,* 69 Ark. 34, 59 S. W. 1096, 63 S. W. 53, and later cases which have approved and followed that case. In this Towell case it was held, to quote a headnote, that "A purchase at commissioner's sale for delinquent levee taxes of a tract of land described as the southwest quarter of a certain section, containing 151 acres, will carry title to 35 acres of land which had previously been added to such land by accretion." The sale in that case was for delinquent levee

taxes, but the same rule was applied in the case of *Crill* v. *Hudson*, 71 Ark. 390, 74 S. W. 299 where the sale had been made for the non-payment of the general taxes.

Apparently and *prima facie* it would appear that since appellee had acquired title to the northeast quarter and the northwest quarter of section 20, he had also acquired title to the accretions to these two quarter sections. He correctly contends that, "Unless there has been a severance of the riparian rights from the platted land, a conveyance of the platted lands carries all of the riparian rights and a separate conveyance of the riparian rights, among which are accretions, is wholly unnecessary." The case of *Mobbs* v. *Burrow*, 112 Ark. 134, 165 S. W. 269, sustains this contention.

However, the record before us on the former appeal shows there had been a severance of the riparian rights from the platted land.

It appears that in May, 1917, the county surveyor, at the request of Mrs. Sanders who had acquired a life estate in the lands here in litigation under the will of her husband, made a survey of the accretions to these two quarter sections of section 20 in order to have the land placed on the tax books. A map or plat of this survey was duly filed in the office of the circuit clerk on July 10, 1917, which was long prior to the assessment and sale of the land for the taxes for the non-payment of which they were sold, and from and after that date the 60 acres have been carried on the tax books and assessed separately and apart from the platted quarter section.

This survey by the county surveyor was authorized by § 13695, Pope's Digest, the purpose of that section being as was said in the recent case of *Bracken* v. *Henson, ante,* p. 572, 201 S. W. 2d 580, to secure a proper description of the land to be assessed so that it might be identified by reference to the plat of the survey which had become a public record. A prudent owner would prefer to pay his taxes under a description which identified his land so that there would be no question but that he had paid his taxes. This is what Mrs. Sanders did

when she had the survey made and the plat thereof recorded as provided by § 13697, Pope's Digest.

Since this survey, the accretions have been carried on the tax books as a separate tract of land. It was separately advertised for sale for the delinquent taxes and was separately sold. It was separately certified to the state and was sold by the land commissioner to Plant under a separate description. This sale by the land commissioner, as stated in the former opinion, was made under the authority of Act 331 of the Acts of 1939 for the sum of $1 per acre, the minimum value required by said Act 331, and the recited consideration in the land commissioner's deed for the accretions was $60, there being 60 acres.

We conclude, therefore, that there had been a separation of the accretions from the land to which the accretions formed for the purpose of taxation. Now Plant, through whom appellee claims, did buy the accretions from the state and would have acquired title thereto under his purchase if the sale thereof for the taxes had been made under a valid description which could have been employed by a reference to the survey hereinbefore referrd to in *Bracken* v. *Henson, supra*. But this 60-acre tract appears to have been described only as "Accretions, section 20," which was not definite in as much as these accretions had been formed to two separate quarter sections of that section.

The former opinion treats the northeast ·quarter, section 20, as one description and the northwest quarter of section 20 as another description, both being separate and distinct from the accretions. This is shown by the reference to northeast quarter as containing 58.87 acres and the northwest quarter as containing 98.30 acres and neither dscription takes into account the 60 acres of accretions. In other words, the holding of the former opinion was that the tax title to both the northeast quarter and the northwest quarter was good, having been confirmed under valid descriptions, but title confirmation of the sale of the accretions was insufficient because a defective description thereof had been employed.

The result of the views here expressed is that it was error to include the accretions in the writ of assistance and that part of the decree will be reversed, and the cause will be remanded for further proceedings not inconsistent with this opinion; these proceedings to be predicated upon the holdings herein made that appellants have the original title to the accretions, whereas appellee has a deed from the state for the accretions based upon a tax sale void for the lack of power to make it.

ED F. McFADDIN, Justice, dissenting. In the opinion on the first appeal in this case (see *Plant* v. *Sanders*, 209 Ark. 108, 189 S. W. 2d 720), in discussing the so-called "accretions of 60 acres to section 20," we said: "We agree that the last tract set out above and described as 'accretions in section 20, 60 acres,' is void for indefinite description and was properly canceled by the court in Plant's deed."

On remand to the chancery court, no additional evidence was heard, and the problem before the chancery court was to "enter a decree in accordance with" the opinion. The chancery court undoubtedly reasoned that if the description, "accretions in section 20, 60 acres" was void,—as we had said it was—then the accretions had never been legally severed or separated from the land to which the accretions adhered, and would pass with a conveyance of the main-land. Evidently, on this reasoning the chancery court held that the "accretions" to the northeast quarter of section 20 passed with the northeast quarter of section 20, and the "accretions" to the northwest quarter of section 20 passed with the northwest quarter of section 20. I think the chancery court was correct in so interpreting our former opinion. The majority in the present opinion says:

"Apparently and *prima facie* it would appear that since appellee had acquired title to the northeast quarter and the northwest quarter of section 20, he had also acquired title to the accretions to these two quarter sections. He correctly contends that, 'Unless there has been a severance of the riparian rights from the platted land,

a conveyance of the platted lands carries all of the riparian rights, and a separate conveyance of the riparian rights, among which are accretions, is wholly unnecessary.' The case of *Mobbs* v. *Burrow*, 112 Ark. 134, 165 S. W. 269, sustains this contention.''

But immediately following the above quotation, the majority adds: ''However, the record before us on the former appeal shows there had been a severance of the riparian rights from the platted land.''

It is this last-quoted sentence that impels this dissent. Based on the same record and plat as in the former appeal, how can this court be consistent in saying, in the first opinion, that the description of the accretions was void, and then saying, in the present opinion, that there had been a valid severance of the accretions, when the validity of the severance depends on the sufficiency of the map? Until a valid and definite map was shown to have been filed, certainly there was no valid severance of the accretions. I have carefully examined the map in the transcript containing the so-called survey of July 10, 1917, and it is my considered opinion that the survey map is absolutely worthless, because it fails to show the length and width of the accretions, is not drawn to scale, and has no legend to show any distances.

Furthermore, if we assume that the river part of the map of the so-called survey of July 10, 1917, is drawn to scale, and if we superimpose that part of the said July 10, 1917, survey on the official government survey as found in the transcript (which I have done), it is clearly apparent that the so-called accretions in the map of July 10, 1917, are all a part of the lands in section 20 shown as part of the government survey. In short, the majority is using an abortive and illegal map as the foundation for the so-called ''survey'' under section 13697, Pope's Digest; and thereby the majority is taking unsevered accretions from the true riparian owner. In the first opinion we in effect held that the 1917 survey was void. Now in the second opinion the majority is allowing the void survey to be valid.

For this reason I respectfully dissent. I mention also (but forego any discussion of it) the fact that by this abortive survey a life tenant has in effect destroyed all the title of the remaindermen.